LAUREL L. BLAYDES *v.* ROBERT M. BLAYDES

SPEZIALE, C. J., PETERS, HEALEY, ARMENTANO and PICKETT, Js.

Argued March 2—decision released June 29, 1982

*Edward J. Holahan, Jr.,* for the appellant (defendant).

*Doris B. Shiller,* with whom, on the brief, was *David S. Maclay,* for the appellee (plaintiff).

PICKETT, J. The defendant appealed from the judgment of the trial court finding him in contempt for failing to pay alimony in accordance with its order.

Attendant on its November 6, 1969 judgment divorcing the parties to this action, the trial court entered orders concerning alimony, custody and child support. On January 2, 1976, that court modified its 1969 judgment to include an escalator clause requiring the defendant to pay to the plaintiff "twenty-five per cent of his adjusted gross income in excess of $40,000 per year." The modified judgment further provided that "[t]he words 'adjusted gross income' shall have the meaning attributed to them in Federal income tax returns. The twenty-five per cent adjustment, if any, is to be made currently, on a good faith estimate of the defendant's expected adjusted gross income for the year in which the payments are due. A final adjustment shall be made on or before May 1st of the following year. The defendant is to provide to the plaintiff a copy of his Federal income tax report on or before May 1 of each year."

Applicable tax statutes on January 2, 1976, defined the term "adjusted gross income" as a taxpayer's gross income prior to deducting alimony payments. In 1977, however, Congress revised the tax code to redefine the term "adjusted gross income" to mean a taxpayer's gross income less any alimony payments made.[1] For the years 1975 and 1976, the defendant computed his alimony liability under the pre-1977 definition of adjusted gross income, but for the years 1977 and 1978, he reduced that liability by applying the 1977 definition of adjusted gross income.[2]

In September, 1979, the plaintiff filed a motion for contempt, alleging that the defendant had failed to pay alimony in accordance with the court's modified judgment of January 2, 1976. More specifically, she contended that when computing his 1977 and 1978 payments, the defendant should not have utilized the 1977 change in the tax laws not contemplated by the parties or the court, but rather should have applied the definition of adjusted gross income in effect on the date of the modification. Agreeing with that contention, the trial court found the

---

[1] 26 U.S.C. § 62 (Sup. IV 1980) provides in pertinent part: "[T]he term 'adjusted gross income' means, in the case of an individual, gross income minus the following deductions: . . . (13) Alimony. The deduction allowed by Section 215."

[2] We have previously considered the effect of statutory revision upon the provisions of a divorce decree. For example, in *Kennedy* v. *Kennedy*, 177 Conn. 47, 411 A.2d 25 (1979), we considered whether the legislative reduction of the age of majority from twenty-one to eighteen affected the obligations of a parent bound under a divorce decree to support his children until they attained the age of twenty-one. Reasoning that "[i]n a contempt action for support incident to a divorce decree, it is the law as set forth in the statutes rather than the contract which imposes the obligations of support . . . ," we declined to uphold a finding that the defendant was in contempt for failing to pay support once his children reached the age of eighteen. Id., 50–51.

defendant in contempt. The defendant claims that he was, at all times, in full compliance with the January, 1976 judgment and that, consequently, the court should have denied the plaintiff's motion for contempt. We agree with the defendant.

Courts have inherent power to coerce compliance with their orders through appropriate sanctions for contemptuous disobedience of them. *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 737, 444 A.2d 196 (1982); *Stoner* v. *Stoner,* 163 Conn. 345, 359, 307 A.2d 146 (1972); *State* v. *Jackson,* 147 Conn. 167, 168–69, 158 A.2d 166 (1960). The contempt remedy is particularly harsh; 2 Nelson, Divorce and Annulment (2d Ed.) § 16.04, p. 395; and may be founded solely upon some clear and express direction of the court. Id., § 16.03, p. 392. "One cannot be placed in contempt for failure to read the court's mind." Ibid. Recognizing those basic tenets, most courts, in deciding whether a contempt has occurred, have refused to expand judgments by implication beyond the meaning of their terms. *Baldwin* v. *Miles,* 58 Conn. 496, 501–502, 20 A. 618 (1890); see, e.g., *UFI Razor Blades, Inc.* v. *District 65, Wholesale, Retail, Office & Processing Union,* 610 F.2d 1018, 1024–25 (2d Cir. 1979); *In re Brown,* 454 F.2d 999, 1008 n.49 (D.C. Cir. 1971); *Lichtenstein* v. *Lichtenstein,* 425 F.2d 1111, 1113 (3d Cir. 1970); *Baumrin* v. *Cournoyer,* 448 F. Sup. 225, 227 (D. Mass. 1978); *Williams* v. *Iberville Parish School Board,* 273 F. Sup. 542, 545 (E.D. La. 1967); *Lawrence* v. *Lawrence,* 384 So. 2d 279, 280 (Fla. App. 1980); *Lamberson* v. *Lamberson,* 164 Kan. 38, 42–43, 187 P.2d 366 (1947); *In re Cobble,* 592 S.W.2d 46, 49 (Tex. Civ. App. 1980).

The order which forms the basis of the defendant's contempt citation expressly states that the "words 'adjusted gross income' shall have the meaning attributed to them in Federal income tax returns." It does not, as the plaintiff urges, refer to the "adjusted gross income" as that phrase was then used in federal income tax returns. We decline to speculate concerning any unexpressed intent of the trial court when it rendered its judgment; neither are we inclined to enlarge that judgment beyond its express terms.[3] "[W]here parties under a mandatory judgment could be subjected to punishment as contemnors for violating its provisions, such punishment should not rest upon implication or conjecture, but the language declaring such rights should be clear, or imposing burdens specific and unequivocal so that the parties may not be misled thereby." *In re Cobble,* supra, 49. The January, 1976 judgment clearly and specifically required that the defendant pay the plaintiff "twenty-five per cent of his adjusted gross income"; it further provided that "[t]he words 'adjusted gross income' shall have the meaning attributed to them in Federal income tax returns." It did not restrict the definition of "adjusted gross income" to that existing in any particular year. Accord-

[3] In *Marcus* v. *Marcus,* 175 Conn. 138, 394 A.2d 727 (1978), and *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 153 A.2d 828 (1959), this court considered issues similar to those presently before us. Both *Marcus* and *Sturtevant,* however, were contract actions; by contrast, this case assumes the posture of a contempt action. Accordingly, the conclusions in the former, although relevant, are not binding on us when deciding the latter. Moreover, in each of the two cited decisions, the court was compelled to find a working definition of the term "adjusted gross income." In this case, because the very terms of the order define the phrase, we need not delve beyond the definition provided.

ingly, we find that the defendant complied with the terms of the court's judgment as expressed in its January, 1976 modification.[4]

There is error, the judgment is set aside and the case is remanded with direction to deny the motion for contempt.

In this opinion the other judges concurred.

[4] Whether the decision reached on this appeal would be the same had the plaintiff sought a modification based on an unanticipated change of circumstances is not before the court. General Statutes § 46b-86 (a); *Noce* v. *Noce,* 181 Conn. 145, 147, 434 A.2d 345 (1980); *Bunche* v. *Bunche,* 180 Conn. 285, 290, 429 A.2d 874 (1980); *Sanchione* v. *Sanchione,* 173 Conn. 397, 407, 378 A.2d 522 (1977); *Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172 (1976).