### KEVIN I. DOWD *v.* CARYL E. DOWD
### (AC 26033)

DiPentima, Harper and Hennessy, Js.

Argued February 14—officially released June 13, 2006

*Alan Scott Pickel,* with whom, on the brief, was *Richard G. Kent,* for the appellant (plaintiff).

*Richard E. Castiglioni,* with whom, on the brief, was *Laura R. Shattuck,* for the appellee (defendant).

*Opinion*

DiPENTIMA, J. In this marital dissolution action, the plaintiff, Kevin I. Dowd, appeals from the trial court's postdissolution judgment holding him in contempt for his failure to pay alimony to the defendant, Caryl E. Dowd, in accordance with the terms of the parties' separation agreement. On appeal, the plaintiff claims that the court improperly (1) held him in contempt because it (a) incorrectly distinguished between his K-1 and 1099 income, and (b) modified the definition of deductions as set forth in the separation agreement, (2) awarded interest on the arrearage and (3) awarded

attorney's fees to the defendant.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the plaintiff's appeal. On February 3, 2000, judgment was rendered dissolving the parties' marriage of more than thirty-three years. The judgment incorporated a separation agreement dated February 3, 2000, the fourth article of which addressed the plaintiff's alimony obligation to the defendant. The article provided in part that, commencing January 1, 2000, the plaintiff was to pay to the defendant a portion of his gross annual earned income on a monthly basis, with a minimum annual obligation of $100,000, until January 1, 2006, after which there no longer would be a minimum annual obligation.[2]

"Gross annual earned income" was defined in the separation agreement as "payments actually received by the [plaintiff], and payments which he has a right to receive, directly attributable to his performance of services." The agreement further provided that "payments received by the [plaintiff] attributable to his ownership of any asset are not gross annual earned income as defined herein."

The parties stipulated that the plaintiff made the following alimony payments during the first four years: $111,221.90 in 2000; $113,181.95 in 2001; $128,639.50 in 2002; and $99,999.96 in 2003. After the hearing on the defendant's December 16, 2003 motion for contempt

[1] The plaintiff's fifth claim, in which he asserted that the court improperly disregarded the testimony of his expert witness, was withdrawn at oral argument.

[2] The plaintiff's gross annual earned income was to be adjusted on a quarterly basis as derived from the following payment formula included in § 4.1: Up to the first $300,000 of the plaintiff's gross annual earned income, the plaintiff was to pay 33.3 percent; from $300,001 to $500,000, he was to pay 25 percent; and from $500,001 to $600,000, he was to pay 10 percent. Thus, the maximum annual obligation was designated as $160,000.

was scheduled, the plaintiff paid additional amounts of $27,805.47 for 2001, $24,999.86 for 2002 and $32,160 for 2003.

The defendant filed five motions for contempt after the dissolution, all concerning the plaintiff's failure to provide her with adequate calculations of his gross annual earned income. On July 9, 2003, after the first three motions were filed, the court issued a memorandum of decision in which it found the plaintiff in contempt, ordering him to provide calculations as required by the separation agreement and to pay the fees of the defendant's attorney. Subsequently, on December 16, 2003, and April 6, 2004, the defendant filed two additional postjudgment motions for contempt alleging that the plaintiff had failed to provide adequate computations in compliance with the court's order. On November 8, 2004, after an evidentiary hearing on July 13 and 14, 2004, the submission of posttrial briefs and a subsequent hearing on October 18, 2004, the court issued a memorandum of decision granting the defendant's motion for contempt. The court found an arrearage of $82,613.96 and ordered the plaintiff to pay the full amount, as well as $33,900 in interest on the arrearage and $35,000 in attorney's fees.[3] This appeal followed. Additional facts will be provided as necessary.

I

The plaintiff's first two claims involve the assertion that the court improperly held him in contempt because it misinterpreted the separation agreement. At the outset, we note that the applicable standard of review

[3] In addition, the court held that "[a]s a compensatory and remedial sanction, for the next three years at issue (2004, 2005 and 2006), the plaintiff shall pay the accountant fee for any certifications requested by the defendant under § 4.6 of the separation agreement up to $2500. For these years, the defendant shall have the right to choose the accountant to provide the certification, and the plaintiff shall give the accountant all documents and information necessary for the certification as requested by the accountant."

requires a two part inquiry. "First, we must determine whether the agreement entered into between the parties in conjunction with the dissolution of their marriage was clear and unambiguous. . . . Second, if we find that the court accurately assessed the intent of the parties regarding the alimony provisions of their marital dissolution agreement, we must then decide whether the court correctly determined that the defendant wilfully had violated its terms." (Citation omitted.) *Medvey* v. *Medvey*, 83 Conn. App. 567, 570–71, 850 A.2d 1092 (2004).

Regarding the first question, a separation agreement that is incorporated into a dissolution judgment is regarded as a contract. *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999). Accordingly, our resolution of the plaintiff's claim is guided by the general principles governing the construction of contracts. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Citations omitted; internal quotation marks omitted.) Id.

As to the second question, "[a] finding of indirect civil contempt must be established by sufficient proof

that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases. . . . A finding of contempt is a factual finding. . . . We will reverse that finding only if we conclude the trial court abused its discretion." (Internal quotation marks omitted.) *Legnos* v. *Legnos*, 70 Conn. App. 349, 352–53, 797 A.2d 1184, cert. denied, 261 Conn. 911, 806 A.2d 48 (2002).[4]

A

The plaintiff first claims that the court improperly included his K-1 income in calculating his gross annual earned income. Specifically, he claims that the court did not give effect to the clear and unambiguous language of the meaning of gross earned annual income, as defined in the separation agreement. We disagree.

Both parties agree that the document provides that gross earned annual income includes "payments actually received by the [plaintiff], and payments which he has a right to receive, directly attributable to his performance of *services*" and excludes "payments received by the [plaintiff] attributable to ownership of any *asset* . . . ." (Emphasis added.) The determinative question before the court was "whether the K-1 income is more similar to earned income, as the defendant claims, or is more similar to income attributable to ownership of an asset, as the plaintiff claims."

The following additional facts found by the court are relevant to the disposition of the plaintiff's claim. The

---

[4] In *Legnos*, this court further clarified the applicable standard of review in a footnote. "We note that the abuse of discretion standard applies to the trial court's decision on the motion for contempt. In the present case, the defendant's claim specifically attacks the factual findings that the court relied on to conclude that the defendant was in contempt. Therefore, in addition to reviewing the propriety of the court's decision as a general matter, we first review the trial court's factual determinations. In so doing, we apply our clearly erroneous standard, which is the well settled standard for reviewing a trial court's factual findings." *Legnos* v. *Legnos*, supra, 70 Conn. App. 353 n.2.

plaintiff is a principal in a financial consulting firm called Nightingale & Associates, LLC (Nightingale), and he provides services to Nightingale either directly or through his personal holding company KID, LLC (KID). KID performs services only for Nightingale, and the plaintiff is the sole employee of KID. As evidence of his compensation for services performed by KID directly for Nightingale, the plaintiff receives tax form 1099. The plaintiff also receives periodic profit distributions, which are reported as K-1 income.

The plaintiff claims that his K-1 income is income derived from an asset rather than services, thereby precluding its inclusion in the calculation of gross annual earned income for alimony purposes. The court made detailed findings on the basis of extensive testimony and numerous exhibits with the aid of the parties' postjudgment briefs. It found that under Nightingale's operating agreement, its members had to be available to provide at least forty-five weeks of full-time service to the company and its clients during any fiscal year, billing clients at rates as high as $450 an hour, and the court also found "unbelievable the plaintiff's insinuation that these allocations [of profits] are made without any consideration about who has performed the work from which these profits are derived."

Additionally, the court evaluated the plaintiff's tax returns and financial affidavits, in which the plaintiff described the K-1 income as "pass through" income and noted that "[f]or federal income tax purposes, the K-1 income is considered income from earnings." The court additionally found that, although the plaintiff had invested only $2500 in Nightingale[5] and his financial

---

[5] Although there was some confusion over whether the plaintiff had invested only $2500 or $75,000 in Nightingale, the transcript confirms that he unequivocally stated that it was the former:

"The Court: The $75,000 was invested into what entity?

"[The Plaintiff]: It was my share of a buyout of Nightingale and Associates, Inc.

affidavits stated that Nightingale had no value as an asset, he had received "more than $1.5 million in K-1 income from Nightingale since the divorce decree." The court thereafter concluded that the facts derived from the evidentiary hearings "belie the plaintiff's claims that his K-1 income solely represents a 'return on investment.'" This finding is logical and supported by the evidence.

The plaintiff further claims that his actions were not wilful, and he should not have been held in contempt, because the terms of the separation agreement were clear and unambiguous, and the exclusion of the K-1 income was not contrary to the express language of the agreement. "A good faith dispute or legitimate misunderstanding of the terms of an alimony or support obligation may prevent a finding that the payor's nonpayment was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion. [Also, it] is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 258 Conn. 713, 718, 784 A.2d 890 (2001). Nevertheless, the court specifically found that the plaintiff was aware of his alimony obligations under the separation agreement and that "he failed to comply with these

---

"[The Defendant's Counsel]: Which is a different company than Nightingale and Associates, LLC?

"[The Plaintiff]: That is correct.

"The Court: What was your initial investment in Nightingale and Associates, LLC?

"[The Plaintiff]: Twenty-five hundred dollars.

"[The Defendant's Counsel]: And is that the only amount of money that you've invested in Nightingale and Associates?

"[The Plaintiff]: LLC is $2500."

obligations based on a creative but meritless interpretation of the agreement. His failure to include the K-1 income in the alimony calculation was wrongful and wilful." Because the underlying findings were not clearly erroneous, we conclude that the court properly exercised its discretion, and the plaintiff's first claim fails.

B

The plaintiff next claims that the court improperly modified the definition of deductions that was set forth expressly in the separation agreement. Specifically, he argues that the court improperly modified the judgment absent a motion for modification and thus violated his due process rights. The plaintiff's claim is without merit.

In support of his claim, the plaintiff refers to the following portion of the court's memorandum of decision: "As a remedial sanction, the plaintiff shall not make any deductions in the calculation of his income for alimony purposes unless the items may lawfully be taken and are taken as deductions on the plaintiff's federal income tax returns." As the plaintiff accurately asserts, "[i]t is a fundamental premise of due process that a court cannot adjudicate a matter until the persons directly concerned have been notified of its pendency and have been given a reasonable opportunity to be heard in sufficient time to prepare their positions on the issues involved." *Costello* v. *Costello*, 186 Conn. 773, 776–77, 443 A.2d 1282 (1982).[6]

---

[6] In *Costello*, our Supreme Court determined that there was a due process violation and explained that "[i]t is precisely because the parties never considered [the applicable order] upon fair notice and an opportunity to be heard that we must agree with the defendant's claim of error." *Costello* v. *Costello*, supra, 186 Conn. 777–78. Here, the parties necessarily considered the impropriety of the deductions because the inadequacy of the plaintiff's calculations of income and deductions was the distinct reason for the five separate motions for contempt. Therefore, the plaintiff's claim that the court violated his due process rights is untenable.

Nevertheless, the passage quoted from the memorandum of decision does not modify, but rather clarifies what already is included in the separation agreement. Section 4.5 of the separation agreement states: "The [plaintiff's] gross annual earned income shall not reflect any reduction for any 'business expense' that was not reasonably necessary for the production of the related income which is in the nature of payment for the [plaintiff's] personal living expenses, and with respect to such issues the parties agree that the [defendant] may challenge the validity of any such expense in a court of competent jurisdiction regardless of any position taken by the [plaintiff] for tax purposes and regardless of any determination by any taxing authority." The plaintiff had been circumventing the clear and unambiguous language of the separation agreement, and the record demonstrates that he had been deducting from the calculation of his gross annual earned income certain personal expenses. In response to the defendant's claim of inadequate descriptions of the calculations made by the plaintiff, the court indicated that "the present issue is not so much the adequacy of his descriptions but the propriety of his deductions."[7] Although it found that "the appropriateness of the deductions cannot be fully examined or determined without the plaintiff's production of backup or supporting information, and he has not provided this information," the court also concluded that "[t]he evidence establishes that the plaintiff has his own view of the terms of the separation agreement and has been inclined to pursue these views even when they conflict with the express provisions of the separation agreement." The court's declaration that

[7] During the October 18, 2004 evidentiary hearing, the court voiced its concern with the manner of the plaintiff's deductions: "My point is that it's one thing to deduct certain expenses that have been incurred that for whatever reason you have not been reimbursed for; that's one animal. But it seems like an entirely different animal to deduct from income received expenses for which you have been reimbursed . . . ."

the plaintiff should not take any deductions in the calculation of his income "unless the items may lawfully be taken and are taken as deductions on the plaintiff's federal income tax returns" merely clarified the express terms of the separation agreement and did not deny the plaintiff due process. His claim therefore fails.

## II

The plaintiff next claims that the court improperly awarded interest to the defendant. Specifically, he argues that the court cannot award interest on alimony payments. We disagree.

"It is well established that we will not overrule a trial court's determination regarding an award of interest absent a clear abuse of discretion." *Gebbie* v. *Cadle Co.*, 49 Conn. App. 265, 277–78, 714 A.2d 678 (1998). The plaintiff noted that our Supreme Court in *Blake* v. *Blake*, 211 Conn. 485, 560 A.2d 396 (1989), distinguished between money judgments and family support judgments by stating that "[w]hile similarities exist between support payments and property settlements, we recognize that each serves a distinct purpose. Support, which is generally modifiable, often serves to satisfy an ongoing obligation, whereas a property settlement constitutes a final resolution of a dispute, and as such, warrants the penalty of interest when satisfaction is not obtained." (Internal quotation marks omitted.) Id., 500. Despite the plaintiff's conclusion that *Blake* demonstrates that interest is permitted *only* in the case of money judgments, the court did not decide the issue but instead left it "for another day." Id., 499.

"The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of any arbitrary rule. . . . The real question in each case is whether the detention

of the money is or is not wrongful under the circumstances." (Citation omitted; internal quotation marks omitted.) *Cecio Bros., Inc.* v. *Feldmann*, 161 Conn. 265, 275, 287 A.2d 374 (1971). "When a former spouse is not justified in failing to pay sums due under a separation agreement, the award of interest is proper." *LaBow* v. *LaBow*, 13 Conn. App. 330, 353, 537 A.2d 157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). Because the record supports the court's conclusion that the plaintiff's exclusion of his K-1 income from his calculations of gross annual earned income for alimony purposes was wrongful and wilful, the court did not abuse its discretion, and the award of interest was proper.[8] The plaintiff's claim thus fails.

### III

The plaintiff further claims that the court improperly awarded counsel fees to the defendant. Specifically, he argues that (1) there was no evidence related to the respective financial positions of the parties and (2) there was no expert testimony regarding the reasonableness of the attorney's fees awarded. We are not persuaded.

We begin by setting forth the relevant standard of review. "When any person is found in contempt of an order of the Superior Court entered under [the applicable marriage dissolution statutes] the court may award to the petitioner a reasonable attorney's fee . . . . On appeal, we review the court's order for abuse of discretion." (Internal quotation marks omitted.) *Medvey* v. *Medvey*, supra, 83 Conn. App. 575.

The essence of the plaintiff's arguments is that there was insufficient evidentiary support for the award of

---

[8] The interest of $33,900 on the arrearage was calculated at the rate of 10 percent from April 15, 2001, to July 14, 2004. "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ." General Statutes § 37-3a.

attorney's fees. The record belies the plaintiff's claim. "[W]hen a court is presented with a claim for attorney's fees, the proponent must present to the court at the time of trial or, in the case of a default judgment, at the hearing in damages, a statement of the fees requested and a description of services rendered. Such a rule leaves no doubt about the burden on the party claiming attorney's fees and affords the opposing party an opportunity to challenge the amount requested at the appropriate time." *Smith* v. *Snyder*, 267 Conn. 456, 479, 839 A.2d 589 (2004).[9] The defendant submitted two detailed affidavits from her attorney outlining the fees charged. Although he had notice of the affidavits, and was given the opportunity during the hearings and in his postjudgment brief, the plaintiff raised no objection to the fees presented. He also did not raise an objection prior to the entry of the court's decision. A reversal of the award in the present case is not justified in light of the plaintiff's failure, prior to this appeal, to interpose *any objection whatsoever* to the defendant's request for attorney's fees. In other words, the plaintiff, in failing to object to the defendant's request for attorney's fees, effectively acquiesced in that request, and, consequently, he now will not be heard to complain about that request. See id., 481.

Accordingly, we conclude that the court possessed sufficient evidence from which to determine the propriety of attorney's fees. Because the court did not abuse its discretion, the plaintiff's final claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[9] The plaintiff posits no authority for his further claim that seems to indicate that expert testimony is required to establish the reasonableness of the attorney's fees requested. On the contrary, "a party need not present expert testimony regarding attorney's fees [because] courts have a general knowledge of what would be reasonable compensation for services which are fairly stated and described." (Internal quotation marks omitted.) *Smith* v. *Snyder*, supra, 267 Conn. 473.