******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBERT J. PARISI *v.* KATHLEEN M. PARISI
(SC 19123)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Espinosa, Js.

*Argued October 24, 2014—officially released January 27, 2015*

*Kenneth J. Bartschi*, with whom were *Dana M. Hrelic* and, on the brief, *M. Caitlin S. Anderson*, for the appellant (defendant).

*H. Daniel Murphy*, for the appellee (plaintiff).

*Opinion*

ROGERS, C. J. This case addresses whether a provision in a separation agreement is clear and unambiguous and, relatedly, whether a party may be held in contempt for violating that agreement. The defendant, Kathleen M. Parisi,[1] appeals from the judgment of the Appellate Court affirming the trial court's denial of her postjudgment motion for contempt, order and clarification, by which she had sought to compel the plaintiff, Robert J. Parisi, to satisfy, in a particular manner, a financial obligation set forth in the parties' separation agreement. The trial court denied the defendant's request to hold the plaintiff in contempt, citing the lack of evidence of his wilful noncompliance. It further denied her requests to clarify the agreement or to issue an order of compliance, after concluding that the agreement was "clear and concise . . . ." Thereafter, the Appellate Court upheld both aspects of the trial court's ruling.[2] *Parisi* v. *Parisi*, 140 Conn. App. 81, 83, 58 A.3d 327 (2013). The defendant claims that the trial court improperly denied her motion because the plaintiff's proposed satisfaction of the financial obligation was impermissible under the terms of the agreement and, therefore, his proposal constituted a wilful failure to comply with the agreement. We conclude that the trial court properly refused to hold the plaintiff in contempt. We disagree with the trial court, however, that the agreement is clear. Accordingly, we reverse in part the judgment of the Appellate Court and remand the matter to the trial court for a hearing at which the intent of the parties and the meaning of the term in question must be determined, after which a concomitant order of compliance should be entered.

The following procedural history is relevant to the appeal. The parties' marriage was dissolved on November 19, 2010. The trial court incorporated into the judgment of dissolution the parties' November 11, 2010 separation agreement, which the parties had negotiated over the course of several months with the assistance of counsel. Under the heading of "Alimony and Child Support," the agreement provided, in relevant part, that "[t]here shall be no periodic alimony payable or requested from the [plaintiff] to the [defendant] or from the [defendant] to the [plaintiff]. In lieu of periodic alimony the [plaintiff] shall pay the [defendant] nontaxable and nondeductible alimony (an 'alimony buyout') of $300,000 from his share of the marital estate on or before the date [that] [j]udgment for dissolution of the marriage is entered."[3] In an asset spreadsheet prepared by the plaintiff and attached to his financial affidavit, which together were provided to the defendant and filed with the court on the day of the dissolution, three 401(k) accounts belonging to the plaintiff with balances totaling $300,000 are listed under the caption, "Buy-out Amount (in Asset-Property) in Lieu of Alimony."

The separation agreement also includes a merger clause stating that the parties "have incorporated in this agreement their entire understanding, and no oral agreement or prior written matter extrinsic to this agreement shall have any force or effect. The parties agree that each is not relying upon any representations other than those expressly set forth herein." Other parts of the agreement, however, make reference to the plaintiff's "financial affidavit filed with the court when judgment is entered," although the alimony buyout provision does not.

On December 14, 2010, the defendant filed a motion for contempt, order and clarification.[4] Therein, she quoted the alimony buyout provision from the separation agreement and stated that the plaintiff had failed to comply with it "in wilful violation of [the trial] court's orders." The defendant raised several other claims in the motion regarding the plaintiff's alleged noncompliance with different and unrelated terms of the separation agreement. She requested, inter alia, that the court clarify the agreement, find the plaintiff in contempt and sanction him monetarily for his wilful violation of the agreement, and order the plaintiff to comply with the agreement by paying the defendant "$300,000, nontaxable and nondeductible," within fourteen days.

The plaintiff objected to the defendant's motion, claiming, in relevant part, that he had been "working assiduously to complete the [alimony] buyout" contemplated by the agreement. He noted that the "separation agreement [did] not specify from which assets" the buyout should be effected, but "merely indicates that [it] will be nontaxable to the defendant and nondeductible to the plaintiff, as alimony otherwise would be treated pursuant to the laws of federal taxation." The plaintiff contended that the transfer he had proposed, itself, would be nontaxable to the defendant, but allowed that "there may be tax consequences following said transfer depending on the type of asset exchanged (e.g., stocks and bonds)." He claimed further that the agreement did not require him to liquidate assets prior to transferring them to the defendant.

A hearing on the defendant's motion was held on January 13, 2011. At the hearing, when questioned by her attorney, the defendant testified[5] that she had not received the $300,000 payment contemplated by the separation agreement, and that she had not heard anything from the plaintiff about it. On cross-examination, she acknowledged that she had heard, through counsel, that the plaintiff intended to pay the $300,000 through a transfer of his retirement assets, but indicated that she considered that approach unsatisfactory and contrary to the agreement. In the defendant's view, although the agreement did not require payment to be made in cash, that was how she had interpreted it, by implication, because of the specification that it be

nontaxable. The defendant agreed that the plaintiff did not have $300,000 in cash available to him, but contended that he should have liquidated his investments in order to obtain the required cash and borne the tax consequences of that liquidation himself.

The defendant agreed further that she had received a copy of the plaintiff's financial affidavit and the attached spreadsheet on November 19, 2010, before the parties' marriage was dissolved, that the spreadsheet indicated that payment of the $300,000 would be made from retirement assets and that she had had a chance to read those documents. She claimed, however, that the spreadsheet differed from the one that was available to her when she had signed the separation agreement on November 11, 2010.[6] The defendant also testified that she had no idea what the tax consequences of the transfer of a retirement asset might be, but that she would not have agreed to any transfer that would result in her having to bear any such consequences.[7]

On January 14, 2011, the trial court issued an order summarily denying the defendant's motion for contempt, order and clarification. On February 3, 2011, the defendant appealed from the denial to the Appellate Court. The trial court, in response to the Appellate Court's order; see Practice Book § 64-1; produced a brief memorandum of decision dated August 8, 2011, explicating the January 14, 2011 order. After noting that the parties, at the time of the dissolution, were well represented by counsel and, after being canvassed, had expressed no reservations about the terms of the separation agreement, the court stated the following: "The plaintiff did not have $300,000 in cash available to him and [the defendant] was aware of it. . . . The court finds that the [defendant] was aware of all aspects of the agreement and that she was thoroughly canvassed. At the contempt hearing all aspects of the agreement were explored and there was no evidence of any wilful conduct that would warrant a finding of contempt. The agreement is clear and concise and needs no clarification."[8]

In a unanimous decision, the Appellate Court affirmed the trial court's denial of the defendant's motion for contempt. *Parisi* v. *Parisi*, supra, 140 Conn. App. 86–87. The Appellate Court concluded that the trial court did not abuse its discretion by declining to hold the plaintiff in contempt, because the evidence presented did not compel a finding that the plaintiff wilfully had violated the parties' agreement.[9] Id., 86. The Appellate Court also rejected the defendant's contention that the trial court had misconstrued the separation agreement as clearly and concisely permitting the plaintiff's proposed satisfaction of the alimony buyout provision at issue through a transfer of his retirement assets.[10] Id., 87. According to the Appellate Court, the defendant had not provided "a reasoned analysis . . .

of the wording of the separation agreement," but merely had expressed dissatisfaction with the trial court's interpretation of it.[11] Id. The Appellate Court concluded further that, although the trial court had the authority to order the plaintiff to comply with the terms of the separation agreement, it did not abuse its discretion in failing to do so because it reasonably could have determined that an order of compliance was not necessary. Id., 88–89. Finally, the Appellate Court declined to issue any order of compliance itself. Id., 89. This appeal followed.

The defendant claims that the Appellate Court, like the trial court, improperly failed to consider the meaning and requirements of the alimony buyout provision of the parties' separation agreement. According to the defendant, that inquiry was a necessary prerequisite to determining whether the plaintiff should be held in contempt for a wilful failure to comply with the separation agreement, and whether an order of compliance should issue. The defendant contends further that the plain language of the separation agreement makes it clear that the plaintiff's proposed satisfaction of the alimony buyout provision was a violation of the terms of that provision. In any event, she contends, the trial court should have entered an order of compliance so she could obtain the payment she was due. The plaintiff claims, to the contrary, that there was no evidence showing that he wilfully had failed to comply with the separation agreement. According to the plaintiff, because the trial court found the wilfulness element of contempt unsatisfied, the clarity or nonclarity of the agreement is of no import in regard to the issue of contempt. He contends, in any event, that the trial court correctly construed the agreement as permitting satisfaction of the alimony buyout provision via a transfer of his retirement assets, and that neither the trial court nor the Appellate Court was required to issue an order of compliance. We conclude that the trial court properly declined to hold the plaintiff in contempt, but for a different reason, namely, because the alimony buyout provision is ambiguous. We conclude further, therefore, that the court, in denying clarification, improperly held that the agreement was "clear and concise . . . ." For that reason, the trial court abused its discretion by failing to undertake the factual inquiry necessary to clarify the meaning of the alimony buyout provision and, thereafter, to issue an appropriate order of compliance.

We begin with general principles and the applicable standards of review. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense." (Internal quotation marks omitted.) *In re Leah S.*, 284 Conn. 685, 692, 935 A.2d 1021 (2007). A contempt judgment cannot stand when, inter alia, the order a contemnor is held to have violated is vague and indefinite, or when "the contemnor,

through no fault of his own, was unable to obey the court's order." (Internal quotation marks omitted.) Id.

Consistent with the foregoing, when we review such a judgment, we first consider "the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. See *Blaydes* v. *Blaydes*, 187 Conn. 464, 467, 446 A.2d 825 (1982) (civil contempt may be founded only upon clear and unambiguous court order); *Dowd* v. *Dowd*, 96 Conn. App. 75, 79, 899 A.2d 76 (first inquiry on review of judgment of contempt for failure to abide by separation agreement was whether agreement was clear and unambiguous), cert. denied, 280 Conn. 907, 907 A.2d 89 (2006). This is a legal inquiry subject to de novo review." *In re Leah S.*, supra, 284 Conn. 693.[12]

"Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding. See *Ramin* v. *Ramin*, 281 Conn. 324, 336, 915 A.2d 790 (2007); *Eldridge* v. *Eldridge*, 244 Conn. 523, 526–27, 529, 710 A.2d 757 (1998); see also *McGuire* v. *McGuire*, 102 Conn. App. 79, 82, 924 A.2d 886 (2007) ([a] finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [party] were in contempt of a court order . . .)." (Internal quotation marks omitted.) *In re Leah S.*, supra, 284 Conn. 693–94.

Regarding the defendant's additional request for an order of compliance, it is well established that after a judgment has been rendered, a trial court has inherent authority and continuing jurisdiction to "fashion a remedy appropriate to the vindication of [that] . . . judgment . . . ." (Internal quotation marks omitted.) *Bauer* v. *Bauer*, 308 Conn. 124, 130, 60 A.3d 950 (2013). Accordingly, when there is an ambiguity in the language of a judgment, the court may "effectuate its prior [judgment] . . . by interpreting [the] ambiguous judgment and entering orders to effectuate the judgment as interpreted"; (internal quotation marks omitted) id.; so long as that interpretation is merely a clarification, and not an alteration, of the original judgment. Id., 130–31. The court's inherent authority "to effectuate its prior judgments, either by summarily ordering compliance with a clear judgment or by interpreting an ambiguous judgment and entering orders to effectuate the judgment as interpreted," is not dependent upon a predicate finding that a noncompliant party is in contempt. *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 246, 796 A.2d 1164 (2002). Finally, as a gen-

eral matter, the trial court has wide discretion and broad equitable power "to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage." (Internal quotation marks omitted.) *Passamano* v. *Passamano*, 228 Conn. 85, 95, 634 A.2d 891 (1993).

We begin, pursuant to the direction of *In re Leah S.*, supra, 284 Conn. 693, by considering whether the parties' separation agreement is sufficiently clear so as to justify a finding of contempt for the plaintiff's alleged noncompliance. We conclude that it is not, and, therefore, that the trial court properly declined to hold the plaintiff in contempt.[13]

"Civil contempt is committed when a person violates an order of court which requires that person in *specific and definite language* to do or refrain from doing an act or series of acts." (Emphasis in original; internal quotation marks omitted.) Id., 695. A "sufficiently clear and unambiguous [order] is a necessary prerequisite for a finding of contempt because [t]he contempt remedy is particularly harsh . . . and may be founded *solely* upon some clear and express direction of the court." (Emphasis in original; internal quotation marks omitted.) Id. "It is also logically sound that a person must not be found in contempt of a court order when ambiguity either renders compliance with the order impossible, because it is not clear enough to put a reasonable person on notice of what is required for compliance, or makes the order susceptible to a court's arbitrary interpretation of whether a party is in compliance with the order." Id. "[W]here parties under a mandatory judgment could be subjected to punishment as contemnors for violating its provisions, such punishment should not rest upon implication or conjecture, but the language declaring such rights should be clear, or imposing burdens specific and unequivocal so that the parties may not be misled thereby." (Internal quotation marks omitted.) *Blaydes* v. *Blaydes*, supra, 187 Conn. 468.

The order at issue is the parties' separation agreement, which was incorporated into the court's judgment. "It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted *in the light of the situation of the parties and the circumstances connected with the transaction.* . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible,

the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact. . . . When the language is clear and unambiguous, however, the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Isham* v. *Isham*, 292 Conn. 170, 180–81, 972 A.2d 228 (2009).

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citations omitted; internal quotation marks omitted.) *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 102–103, 84 A.3d 828 (2014).

Applying the foregoing principles to the present matter, we conclude that the alimony buyout provision of the parties' separation agreement is ambiguous, thereby precluding a finding of contempt. To begin, it is unclear whether the payment at issue was intended to be in the nature of a property distribution or lump sum alimony. The payment is referred to variously as "alimony" or an "alimony buyout," and it is stated to be in lieu of "periodic alimony," but not in lieu of "alimony" per se. Furthermore, it is described as being "nontaxable" to the recipient and "nondeductible," to the payor, which alimony typically is not. The nature of the payment, if it were clear, might have been instructive as to what the parties intended regarding the manner of payment because, as the defendant contends, alimony is intended to provide the payee spouse ongoing support and, as such, ought to be readily accessible. Additionally, it is unclear whether the parties, in specifying that the payment be "nontaxable and nondeductible," were contemplating, as the plaintiff claims, that only the initial transfer itself meet those qualifications, or rather, as the defendant suggests, the qualifications apply more broadly to include her subsequent liquidation of the

funds for her use. Moreover, although the plaintiff, by his November 19, 2010 affidavit, indicated, in the attached spreadsheet, that he would satisfy the provision at issue via a transfer of his retirement funds, the defendant may not have had that document available to her when she signed the agreement one week earlier, the agreement itself provides that extrinsic documents shall have no force or effect, and the alimony buyout provision, unlike other portions of the agreement, makes no reference to the affidavit. In short, although the affidavit may be peripherally relevant to the issue of the parties' intent, its import is not, as the trial court suggested, entirely clear. Finally, as to what forms of payment were acceptable for the satisfaction of the alimony buyout provision, the agreement is completely silent. Taken together, the foregoing factors render the parties' agreement unclear as to the issue at hand.[14]

In sum, each of the parties has set forth a plausible construction of the alimony buyout provision, with both constructions having bases in the language used in the separation agreement. We conclude, therefore, that the agreement is not, as the trial court held, "clear and concise," but rather, is ambiguous, with its meaning presenting a question of fact that the trial court should have fully considered and resolved. See *Isham* v. *Isham*, supra, 292 Conn. 184 ("when language of agreement is susceptible to more than one reasonable interpretation, agreement is ambiguous"). "It is elementary that neither this court nor the Appellate Court can find facts in the first instance. . . . [A]n appellate court cannot find facts or draw conclusions from primary facts found, but may only *review* such findings to see whether they might be legally, logically and reasonably found . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Cruz* v. *Visual Perceptions*, *LLC*, supra, 311 Conn. 106. Accordingly, this case must be remanded to the trial court to resolve the ambiguity in the parties' separation agreement through a determination of their intent after consideration of all available extrinsic evidence and the circumstances surrounding the entering of the agreement. See *Marshall* v. *Marshall*, 151 Conn. App. 638, 648, 97 A.3d 1 (2014) (remanding case with ambiguous alimony provision in separation agreement to trial court to determine intent of parties and, accordingly, extent of arrearage).

We next consider whether the trial court abused its discretion by declining to issue an order of compliance as the defendant had requested. "Judicial discretion is always a legal discretion, exercised according to the recognized principles of equity. . . . The action of the trial court is not to be disturbed unless it abused its legal discretion, and [i]n determining this the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the

ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, supra, 244 Conn. 534. As we set forth previously herein, the parties' agreement and, therefore, the trial court's judgment incorporating it, was ambiguous, requiring interpretation and clarification by the trial court. Two months after the parties' marriage had been dissolved and the payment at issue was due to have been made, the parties remained in limbo due to the ambiguity of the agreement. Under the circumstances, we conclude that the trial court's failure to clarify the agreement, and to enter a concomitant order of compliance, was an abuse of discretion. On remand, therefore, once the meaning of the agreement has been clarified, an accompanying order of compliance should be issued.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to remand the case to the trial court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.

[1] We note that various documents were filed in the trial court listing the defendant as Kathleen F. Parisi. For purposes of convenience, we refer to the defendant in the same manner as did the trial court.

[2] We granted the defendant's request for certification to appeal, limited to the following question: "Did the Appellate Court properly conclude that the evidence did not support a finding that the plaintiff wilfully failed to satisfy the terms of the alimony buyout provision by attempting to pay his obligations with assets worth less than the agreed upon amount?" *Parisi* v. *Parisi*, 308 Conn. 916, 917, 64 A.3d 329 (2013). Upon further review of the record and briefs, we reframe the certified question to conform to the issue actually presented: "Did the Appellate Court properly uphold the trial court's denial of the defendant's postjudgment motion for contempt, order and clarification?" See *Hartford* v. *McKeever*, 314 Conn. 255, 259 n.2, 101 A.3d 229 (2014) (court may reformulate issue to conform to issue actually presented).

[3] We shall refer to this provision of the parties' separation agreement hereinafter as the "alimony buyout provision."

[4] The motion thereafter was supplemented with a document captioned, "Claims for Relief re: Defendant's Motion for Contempt, Order, and Clarification, Post Judgment dated 12/13/10," wherein the defendant detailed the remedies that she sought.

[5] The defendant was the only witness to testify at the hearing.

[6] The plaintiff's November 9, 2010 and November 19, 2010 financial affidavits are part of the record. The spreadsheet attached to the November 9, 2010 affidavit, unlike the spreadsheet attached to the November 19, 2010 affidavit, does not indicate that the plaintiff's 401(k) accounts would be used to satisfy the alimony buyout provision.

[7] In her appellate brief to this court, the defendant contends that, because she was only forty-seven years old at the time of the dissolution, if she attempted to access funds from a retirement asset, she would have been subject to substantial early withdrawal penalties as well as income taxation on the amount withdrawn.

[8] The defendant filed a motion for articulation of the trial court's August 8, 2011 memorandum of decision requesting that the court articulate its decision as to the other matters raised in her motion for contempt, order and clarification. The trial court denied the motion for articulation. The Appellate Court thereafter granted the defendant's motion for review of the trial court's ruling, but denied the relief requested therein.

[9] The Appellate Court cited the evidence that the plaintiff had offered to satisfy the payment with retirement assets and "a lack of evidence that his motive in doing so was to avoid satisfying the full terms of the agreement . . . ." *Parisi* v. *Parisi*, supra, 140 Conn. App. 86.

[10] We observe that it is unclear whether the trial court in fact interpreted

the agreement in this fashion, because that court did not explain what it believed the agreement required, but merely described the agreement as "clear and concise . . . ." Alternatively, the court might have agreed with the defendant that the agreement clearly required a cash payment, but concluded nevertheless that the plaintiff's noncompliance was not wilful because he lacked sufficient cash to make that payment and had endeavored to satisfy the obligation otherwise.

[11] This assertion is not accurate. Many pages of both the defendant's initial and reply briefs to the Appellate Court are devoted to an analysis of the language of the separation agreement.

[12] In the present case, as in *Dowd* v. *Dowd*, supra, 96 Conn. App. 79, the court order to be reviewed for clarity consists of the parties' separation agreement, which was incorporated into the judgment of dissolution. The determination of whether contractual language is plain and unambiguous also is a question of law subject to plenary review on appeal. *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 101–102, 84 A.3d 828 (2014).

[13] We agree with the defendant that the trial court, contrary to *In re Leah S.*, supra, 284 Conn. 693, improperly considered the issue of the plaintiff's wilfulness *prior* to assessing the clarity of the parties' separation agreement. Specifically, the trial court appeared to rely upon the plaintiff's inability to satisfy the alimony buyout provision with cash on hand, and the defendant's knowledge of that circumstance, to conclude that there was no wilful non-compliance. See *Marshall* v. *Marshall*, 151 Conn. App. 638, 651, 97 A.3d 1 (2014) ("[i]nability to pay is a defense to a contempt motion" [internal quotation marks omitted]); see also id., 650 ("To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." [Internal quotation marks omitted.]). Although this approach was improper, we nevertheless agree with the trial court's ultimate determination that the plaintiff could not be held in contempt because *In re Leah S.* requires *both* a clear order *and* wilful noncompliance. Accordingly, the lack of either one is fatal to the defendant's motion for contempt.

[14] Consulting other portions of the separation agreement provides little assistance for interpreting the alimony buyout provision. For example, in a section dealing with student loans, the parties specify with detail which assets will be applied to satisfy the various loans in question. This suggests, on the one hand, that if the parties intended that the alimony buyout provision would be satisfied with particular assets, such as the plaintiff's 401(k) accounts, they would have said so clearly. On the other hand, it could be the case that, where no form of payment is specified, any form of payment was considered acceptable.