******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PRESCOTT, J., concurring. I agree with and join parts I A and II of the majority opinion. I also agree with the result reached in part I B of the majority opinion and generally with the reasoning contained therein, particularly in light of the specific manner in which the defendant, Elmer G., on appeal has challenged his conviction of three counts of criminal violation of a restraining order. I write separately to set forth my concerns regarding the ambiguity created by the court, *Reynolds, J.*, when it issued the restraining order of which the defendant was convicted of violating, and what I see as an anomaly in our jurisprudence regarding the degree of clarity that such orders must have in order to convict a defendant of violating them.

Although the majority opinion adequately sets forth the facts that support the defendant's conviction of the three counts of violating a restraining order, I nevertheless reiterate some of those facts that I believe deserve emphasis. First, both the ex parte restraining order and the later temporary restraining order identified A.N. as the "protected person" and expressly prohibited the defendant from contacting "the protected person" in any manner, including having no "written, electronic or telephone contact . . . ." Although the orders also awarded temporary custody of the defendant's minor children to A.N., denied the defendant regular visitation rights, and provided that the orders "also [protect] the protected person's minor children," neither *expressly* indicates that the prohibitions against written, electronic, and telephone contact with the protected person were to apply equally to the minor children, although such an interpretation certainly is not an unreasonable one.

To the extent that the written temporary restraining order was clear, the March 15, 2012 hearing on that order created, in my view, uncertainty as to its scope. The order, as described on the record, again identified the protected person as A.N. There is no ambiguity that the defendant was prohibited from contacting "the protected person in any manner, including by written, electronic or telephone contact . . . ." A review of the transcript of the hearing further demonstrates that the court and the parties were in agreement that the order would constitute a no contact restraining order *with respect to A.N.* The precise scope of the order with respect to the children, however, was far less clear.

The court engaged in the following colloquy with the victim advocate concerning the parties' understandings as to the scope of the restraining order:

"The Court: I told you what was going to be the tenor of my orders, and I asked you to see if you could work

out particulars just so that I don't enter something impractical for the parties. Were you able to do that?

"The Victim Advocate: Yes, Your Honor.

"The Court: Okay. Why don't you tell me the essence of what you've worked out.

"The Victim Advocate: What we've agreed upon is that it would be considered a no contact restraining order.

"The Court: As far as mom is concerned?

"The Victim Advocate: As far as mom is concerned.

"The Court: Right.

"The Victim Advocate: Contact with the kids [will] be limited to weekly supervised visits.

"The Court: Contact with minor children weekly, supervised. Yes . . . ."

Everyone agreed that in-person contact with the children was to be strictly limited to weekly supervised visits. There was, however, no clear statement by the court or the parties with respect to whether other, non-in-person contact with the couple's minor children, such as letters, telephone calls, e-mails or text messages, was also prohibited by the terms of the order. Although the court explicitly instructed the defendant and ensured his understanding that he was not to contact A.N. "in any manner," that same language was never used with respect to contact with the children.

The court's instructions to the defendant provided as follows: "So, with that in mind, I am going to order a temporary restraining order. Now, as to [A.N.] and the five children, sir, you are not to assault, threaten, abuse, harass, follow, interfere with or stalk. You are to stay away from the home of [A.N.], or wherever she's residing, and you're not to contact *her* in any manner. As far as the children are concerned, you can have contact with your children, but for now we need it supervised. It's to be weekly and supervised. . . . Any contact that you need to have with your wife, or that your wife needs to have with you, will go through a third party, either [S.G.] or [C.T.]."

The defendant was charged with criminally violating the restraining order in three ways. First, he allegedly contacted the victim via a text message on March 28, 2012. Second, he allegedly contacted the victim by text message on April 10, 2012. Third, he allegedly contacted the victim by way of a written letter sometime "between March 5, 2012, and April 10, 2012 . . . ." Although the record establishes that the victim received the letter in April, 2012, there is no direct evidence as to when the letter was written or given to the victim's sibling for delivery. In other words, the third violation may have occurred when the ex parte restraining order was in effect.

In order to convict the defendant of violating the restraining order, the state was obligated to prove beyond a reasonable doubt that (1) a restraining order was issued against the defendant, (2) the defendant had knowledge of the terms of the order, (3) the order protected the victim in this case, (4) the order prevented the defendant from calling or writing to her, and (5) the defendant wrote to and called the victim while the order was in effect. General Statutes § 53a-223b (a) (1) (A) and (2) (B); *State* v. *Carter*, 151 Conn. App. 527, 534–35, 95 A.3d 1201 (2014), appeal dismissed, 320 Conn. 564, 132 A.3d 729 (2016) (certification improvidently granted).

The court gave the jury the following instructions with respect to determining whether the defendant had knowledge of the terms of the restraining order: "The [relevant] statute . . . reads in pertinent part as follows: a person is guilty of criminal violation of a restraining order when a restraining order has been issued against such person and such person having knowledge of the terms of the order contacts the person in violation of the order.

"For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: the first element is that a restraining order has been issued against the defendant. The second element is that the defendant had knowledge of the terms of the order. This means that the defendant must know of the conditions of the order. A person acts knowingly with respect to conduct which a circumstance described by a statute defining an offense when he is aware that his conduct is of such a nature or that such circumstance exists. An act is done knowingly if done voluntarily and purposefully, and not because of mistake, inadvertence or accident.

"Ordinarily, knowledge can be established only through an inference from other proven facts and circumstances. The inference may be drawn if the circumstances are such that a reasonable person of honest intention in this situation of the defendant would have concluded that the defendant had knowledge of the terms of the order. The determinative question is whether the circumstances in the particular case form a basis for a sound inference as to the knowledge of the defendant in the transaction under inquiry.

"The third element is that the defendant violated a condition of the restraining order in that he contacted a person in violation of the order.

"In summary, the state must prove beyond a reasonable doubt that a restraining order had been issued against the defendant and that the defendant violated a condition of that order."

The defendant claims on appeal that there was insufficient evidence to prove beyond a reasonable doubt that

he violated either the ex parte restraining order or the temporary restraining order issued to him on March 15, 2012. Specifically, he contends that the evidence was insufficient because it did not establish beyond a reasonable doubt that the orders protected the victim in this case, and that, even if they did, he knew that they prevented him from text messaging or writing to the victim while in effect.

Because the defendant chose to raise his challenge to his conviction in this manner, we are constrained by the well-worn standard for reviewing the sufficiency of the evidence. Under that standard, which requires us to construe all of the evidence in a light most favorable to sustaining the verdict; *State* v. *Carter*, supra, 151 Conn. App. 533; I agree with the majority that there was sufficient evidence, including the reasonable inferences to be drawn therefrom, to establish that the defendant believed that the temporary restraining order prevented him from text messaging or writing to the victim. In other words, even if the temporary restraining order and the court's explanation of it, taken together, created an ambiguity regarding whether the defendant was permitted to text message or write to the victim while the order was in effect, the jury appears to have resolved that ambiguity in favor of the state by concluding that he had had knowledge of the terms of the order.

In several related contexts, however, we require that a court order be sufficiently clear and unambiguous as a matter of law before a litigant is held responsible for violating it. This requirement is particularly important in circumstances in which the conduct that is said to violate the order is otherwise noncriminal conduct. See *State* v. *Boseman*, 87 Conn. App. 9, 17, 863 A.2d 704 (2004), cert. denied, 272 Conn. 923, 867 A.2d 838 (2005).

For example, motions for contempt in civil cases may not be granted unless the court order the litigant allegedly violated is clear and unambiguous as a matter of law. As our Supreme Court has stated: "[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. See *Blaydes* v. *Blaydes*, 187 Conn. 464, 467, 446 A.2d 825 (1982) (civil contempt may be founded only upon clear and unambiguous court order); *Dowd* v. *Dowd*, 96 Conn. App. 75, 79, 899 A.2d 76 (first inquiry on review of judgment of contempt for failure to abide by separation agreement was whether agreement was clear and unambiguous), cert. denied, 280 Conn. 907, 907 A.2d 89 (2006). This is a legal inquiry subject to de novo review. See *In re Jeffrey C.*, [261 Conn. 189, 194–97, 802 A.2d 772 (2002)] (conducting, but not specifying, de novo review of whether failure to follow supplemental orders could result in finding of contempt); *Baldwin* v. *Miles*, 58

Conn. 496, 501–502, 20 A. 618 (1890) (conducting, but not specifying, de novo review of whether injunction's language was too vague and indefinite so as to support judgment of contempt); see also *Perez* v. *Danbury Hospital*, 347 F.3d 419, 423–25 (2d Cir. 2003) (reviewing de novo district court's determination that consent decree on which judgment of contempt was based was clear and unambiguous)." *In re Leah S.*, 284 Conn. 685, 693, 935 A.2d 1021 (2007).

We have imposed similar requirements in violation of probation proceedings. In *State* v. *Boseman*, supra, 87 Conn. App. 16, this court held that conditions of probation, as a matter of law, must be sufficiently clear so as to provide a probationer fair warning of the conduct proscribed: "The claim that the defendant lacked sufficient notice concerning this condition presents a question of law over which our review is plenary. . . . [T]he interpretation of a probation condition and whether it affords a probationer fair warning of the conduct proscribed thereby are essentially matters of law and, therefore, give rise to de novo review on appeal." (Citation omitted; internal quotation marks omitted.) Id.

In *Boseman*, the defendant was charged with violating his probation on the ground that, by dropping off a new lunch box for his son at the home where the child lived with his mother, he had violated a condition of probation that he have no contact with the mother of his child. This court emphasized in *Boseman* that "[w]here noncriminal activity forms the basis for the revocation of probation, due process requires specific knowledge that the behavior involved is proscribed. [W]here the proscribed acts are not criminal, due process mandates that the [probationer] cannot be subject[ed] to a forfeiture of his liberty for those acts unless he is given prior fair warning." (Internal quotation marks omitted.) Id., 17.

Finally, criminal statutes themselves must "provide fair notice of the conduct to which they pertain . . . . [W]e insist that laws give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. . . . [A] law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law." (Citation omitted; internal quotation marks omitted.) *State* v. *Indrisano*, 228 Conn. 795, 802, 640 A.2d 986 (1994). Whether a criminal statute is unconstitutionally vague is a question of law to be decided by the court. *State* v. *Winot*, 294 Conn. 753, 758–59, 988 A.2d 188 (2010).

My research, however, has not revealed any authorities that discuss, with respect to prosecutions for violations of a protective order or a temporary restraining

order, whether such an order must have the same degree of clarity and unambiguity that must exist for the enforcement of civil orders, probation conditions and our criminal statutes. Instead, this issue seems to be addressed solely as a factual question for the finder of fact as part of its determination regarding whether the defendant had "knowledge of the terms of the order . . . ." General Statutes § 53a-223b (a) (2).

In sum, I have serious concerns regarding whether the temporary restraining order in this case, as explained to the defendant by the court, was sufficiently clear and unambiguous as a matter of law that the defendant should suffer a loss of liberty for violating it. This is particularly true in light of the fact that the conduct underlying his conviction was otherwise non-criminal conduct but for the existence of the restraining order. Indeed, if this same order was sought to be enforced by way of civil contempt in a family matter, I would have serious doubt about whether it would pass the threshold showing that it was clear and unambiguous under the particular circumstances of this case.

Nevertheless, I conclude that the defendant's conviction must be affirmed for several reasons. First, the defendant never moved to dismiss the counts of the information on the ground that they were insufficient as a matter of law and thus should not be submitted to the jury for its consideration. See Practice Book § 41-8. Second, the defendant has not argued on appeal that, as a matter of law, the restraining orders lacked sufficient clarity and thus could not be enforced under the circumstances of this case. Finally, the defendant did not submit any particular request to charge that would seek even a jury determination regarding the question of whether the restraining orders were sufficiently clear and unambiguous. Instead, the defendant was content to have the jury decide, as a factual question, whether he had knowledge of the terms of the orders.

The jury resolved this question in favor of the state. On appeal, the defendant challenges the sufficiency of the evidence as it relates to that question. In light of our standard of review, I am obligated to affirm the defendant's conviction on those counts.

––––––––––––––––––––––––