******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RICHARD P. GABRIEL *v.* DIANA K. GABRIEL
(SC 19571)

Rogers, C. J., and Palmer, Zarella, Eveleigh, Robinson, Vertefeuille, Js.

*Argued October 11—officially released December 28, 2016\**

*Kenneth J. Bartschi*, with whom were *Brendon P. Levesque* and, on the brief, *Joseph T. O'Connor*, for the appellant (plaintiff).

*Norman A. Roberts II*, with whom, on the brief, was *Tara C. Dugo*, for the appellee (defendant).

*Opinion*

EVELEIGH, J. The plaintiff, Richard P. Gabriel, appeals from the judgment of the Appellate Court, which reversed the judgment of the trial court granting his motion for modification of unallocated alimony and support, and denying the motion for contempt filed against him by the defendant, Diana K. Gabriel. On appeal, the plaintiff claims that the Appellate Court incorrectly reversed the judgment of the trial court. Specifically, the plaintiff asserts that the Appellate Court incorrectly concluded that the trial court improperly: (1) denied the defendant's motion for contempt, which was based on the plaintiff's unilateral reduction in the unallocated alimony and child support; and (2) granted the plaintiff's motion for modification of unallocated alimony and child support. We agree with the plaintiff's claim regarding the motion for contempt, but disagree with his claim regarding the motion for modification. Accordingly, we affirm in part and reverse in part the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following facts and procedural history: "The plaintiff and the defendant were married on July 1, 1995, and three children were born of the marriage. On April 7, 2011, the court dissolved the parties' marriage. The court incorporated the parties' separation agreement into its judgment. The parties' separation agreement also incorporated a July 21, 2010 parenting plan, in which the parties agreed to share joint physical and legal custody of the children, with primary physical custody also shared. The agreement also provided for unallocated alimony and support from January 1, 2011 to December 31, 2015. The alimony was nonmodifiable by the defendant as to amount and duration. The plaintiff, however, had the right to seek a modification of alimony on the basis of a substantial change in circumstances, so long as those circumstances were not based on the defendant's cohabitation or an increase in the defendant's earnings up to $100,000.

"On May 1, 2012, the parties entered into a postjudgment parenting plan because the defendant was relocating to California, and the plaintiff did not want the defendant to take the children with her. Pursuant to this plan, which the court accepted, both parties continued to share 'joint legal and physical custody of the minor children,' but the children primarily would reside with the plaintiff in Connecticut. The parenting plan also granted the defendant liberal visitation, including either the children's February or April vacation and a substantial portion of their summer vacation. The parenting plan was contingent on the defendant moving to California and was void if she stayed in Connecticut. The parenting plan did not address the issue of child support, and the court did not raise that issue during the hearing on the parenting plan.

"On June 28, 2012, the plaintiff filed a motion for modification of child support, asserting that '[t]he financial circumstances of the parties have changed as a result of the defendant's relocation. [The defendant] no longer has primary residential custody of the children and is no longer primarily responsible for their financial needs. The [plaintiff] now has custody and primary responsibility for all three minor children.' On October 5, 2012, without permission from the court, the plaintiff unilaterally decreased his payments to the defendant from $54,666.66 per month to $20,000 per month. In response, the defendant filed a motion for contempt, alleging that the plaintiff improperly had engaged in self-help by reducing his unallocated support payments in violation of the existing orders of the court.

"On November 5, 2013, the court granted the plaintiff's postjudgment motion for modification of child support,[1] finding that the parties had stipulated that there had been a substantial change in circumstances. The court also found that the defendant's financial needs had been reduced significantly by her move to California and her cohabitation with a man who was paying a portion of her household expenses. Accordingly, the court reduced the plaintiff's alimony payments to $20,000 per month. On the basis of the plaintiff having assumed primary physical custody of the children, the court, citing General Statutes § 46b-224,[2] also found that the plaintiff was not in wilful contempt for unilaterally reducing his unallocated payments to the defendant." (Footnotes altered.) *Gabriel* v. *Gabriel*, 159 Conn. App. 805, 807–10, 123 A.3d 453 (2015).

Thereafter, the defendant appealed to the Appellate Court, claiming that the trial court improperly modified her alimony award and denied her motion for contempt. Id., 807. The Appellate Court concluded that the trial court improperly modified the unallocated alimony and child support award without considering what portion of the original award constituted child support and what portion constituted alimony, improperly failed to consider the child support guidelines when fashioning the new award, and "focused on the fact of the defendant's cohabitation in modifying the alimony portion of the unallocated award." Id., 818. The Appellate Court further concluded that the trial court improperly denied the defendant's motion for contempt because the trial court had incorrectly concluded that § 46b-224 suspends child support payments "by operation of law . . . ." (Internal quotation marks omitted.) Id., 820. Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the matter for a new hearing on the plaintiff's motion for modification and for reconsideration of the defendant's motion for contempt.

Thereafter, we granted the plaintiff's petition for certification to appeal, limited to three issues. "Did the

Appellate Court properly conclude that: [1] The trial court improperly modified the unallocated alimony and child support order without first making specific findings under the child support guidelines, when the award was modified to an alimony award because the obligor became the primary custodial parent and the recipient no longer receives child support? [2] The trial court improperly considered the financial impact of the defendant's cohabitation in fashioning a modified alimony award, despite the fact that a substantial change in circumstances was established on a different basis? [3] The trial court improperly relied on . . . § 46b-224 in concluding that the plaintiff had not acted wilfully in unilaterally reducing the unallocated alimony and support payments to the defendant after he became the primary custodial parent?" *Gabriel* v. *Gabriel*, 319 Conn. 948, 125 A.3d 527 (2015). Additional facts will be set forth as necessary.

I

The plaintiff first claims that the Appellate Court incorrectly reversed the judgment of the trial court denying the defendant's motion for contempt because, at the time the plaintiff unilaterally reduced the unallocated alimony and support payment, there was no clear order of the trial court regarding his support obligation. The defendant responds that the Appellate Court properly reversed the judgment of the trial court denying the motion for contempt filed against the plaintiff. Specifically, the defendant asserts that the trial court should have found the plaintiff in contempt for unilaterally reducing the unallocated alimony and support payments to the defendant after he became the primary custodial parent because the court had not modified its previous order requiring the plaintiff to pay unallocated alimony and child support. We agree with the plaintiff and, accordingly, reverse the judgment of the Appellate Court with respect to the contempt order.

We begin with general principles and the applicable standards of review. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . A contempt judgment cannot stand when, inter alia, the order a contemnor is held to have violated is vague and indefinite, or when the contemnor, through no fault of his own, was unable to obey the court's order. . . .

"Consistent with the foregoing, when we review such a judgment, we first consider the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. See *Blaydes* v. *Blaydes*, 187 Conn. 464, 467, 446 A.2d 825 (1982) (civil contempt may be founded only upon clear and unambiguous court order); *Dowd* v. *Dowd*, 96 Conn. App. 75, 79, 899 A.2d 76 (first inquiry on review of judgment of contempt for failure to abide by separation agreement

was whether agreement was clear and unambiguous), cert. denied, 280 Conn. 907, 907 A.2d 89 (2006). This is a legal inquiry subject to de novo review. . . .”

“Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court’s determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding. See *Ramin* v. *Ramin*, 281 Conn. 324, 336, 915 A.2d 790 (2007); *Eldridge* v. *Eldridge*, 244 Conn. 523, 526–27, 529, 710 A.2d 757 (1998); see also *McGuire* v. *McGuire*, 102 Conn. App. 79, 82, 924 A.2d 886 (2007) ([a] finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [party] were in contempt of a court order . . .).” (Citations omitted; footnote omitted; internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 379–80, 107 A.3d 920 (2015).

Following our well established procedure for reviewing a decision on a motion for contempt, we must first decide whether the underlying order in the present case, “constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt.” (Internal quotation marks omitted.) Id., 380. It is undisputed that the trial court’s initial order implementing the parties’ separation agreement and requiring the plaintiff to pay unallocated alimony and child support in the amount of $54,666.66 monthly until December 1, 2015, was a clear order of the court. Therefore, resolution of this appeal requires us to decide whether this initial order remained sufficiently clear and unambiguous at the time the plaintiff unilaterally reduced his payment so as to support a judgment of contempt.

The plaintiff filed a motion for modification of the unallocated alimony and child support payments due to a substantial change of circumstances on June 28, 2012. Specifically, the plaintiff asserted that “the financial circumstances of the parties have changed as a result of the defendant’s relocation. [The defendant] no longer has primary residential custody of the children and is no longer primarily responsible for their financial needs. The [plaintiff] now has custody and primary responsibility for all three minor children.” Both the trial court and the Appellate Court concluded that the plaintiff’s filing of the motion for modification triggered § 46b-224. *Gabriel* v. *Gabriel*, supra, 159 Conn. App. 820–21. We agree.

Section 46b-224 provides in relevant part: “Whenever . . . the Superior Court, in a family relations matter . . . orders a change or transfer of the guardianship or custody of a child who is the subject of a preexisting support order, and the court makes no finding with

respect to such support order, such guardianship or custody order shall operate to: (1) Suspend the support order if guardianship or custody is transferred to the obligor under the support order; or (2) modify the payee of the support order to be the person or entity awarded guardianship or custody of the child by the court, if such person or entity is other than the obligor under the support order."

In *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 550, 46 A.3d 112 (2012), this court explained the language of § 46b-224 as follows: "Use of the term 'whenever' indicates that the statute applies every time in which the two specified conditions are met without other restriction. Similarly, the use of the term 'shall' denotes a mandatory term, suggesting that the suspension or redirection of support occurs by operation of law. See *Hall Manor Owner's Assn.* v. *West Haven*, 212 Conn. 147, 153, 561 A.2d 1373 (1989) (when legislature has used word 'shall,' '[i]f it is a matter of convenience, the statutory provision is directory; if it is a matter of substance, the statutory provision is mandatory'). Together, this language signifies that § 46b-224 is invoked upon satisfaction of the two specified conditions automatically . . . ."

In the present case, the two specified conditions were satisfied, namely, the trial court transferred primary physical custody to the plaintiff in May, 2012, and made no determination with respect to the preexisting unallocated alimony and child support order. Therefore, § 46b-224 was automatically invoked and the portion of the preexisting unallocated alimony and child support order that was attributable to child support was suspended. As a result, at the time that the plaintiff unilaterally reduced his payment to the defendant in October, 2012, there was no longer a clear and unambiguous order of the trial court requiring him to pay a specific amount of money to the defendant. To the contrary, because the original order of the court provided for unallocated alimony and support and an unspecified portion of that order was subsequently suspended, there was no longer a clear and unambiguous order of the trial court regarding the plaintiff's support obligations.

It is well established that "[c]ivil contempt is committed when a person violates an order of court which requires that person in *specific and definite language* to do or refrain from doing an act or series of acts. . . . Whether an order is sufficiently clear and unambiguous is a necessary prerequisite for a finding of contempt because [t]he contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind. . . . This is a long-standing tenet of the law of contempt. . . . It is also logically sound that a person must

not be found in contempt of a court order when ambiguity either renders compliance with the order impossible, because it is not clear enough to put a reasonable person on notice of what is required for compliance, or makes the order susceptible to a court's arbitrary interpretation of whether a party is in compliance with the order." (Citations omitted; emphasis altered; internal quotation marks omitted.) *In re Leah S.*, 284 Conn. 685, 695, 935 A.2d 1021 (2007); see also *Blaydes* v. *Blaydes*, supra, 187 Conn. 467; *Baldwin* v. *Miles*, 58 Conn. 496, 502, 20 A. 618 (1890).[3]

In light of the applicability of § 46b-224 in the present case, at the time that the plaintiff unilaterally reduced his payment to the defendant, there was no clear order of support. Indeed, the plaintiff had taken all reasonable steps to determine what his obligations to the defendant were at the time he unilaterally reduced his payments—namely, by filing a motion for modification of the support order due to the change in primary physical custody. On the basis of these facts, we cannot conclude as a matter of law that the underlying order was sufficiently clear so as to support a finding of contempt.[4] Accordingly, we reverse the judgment of the Appellate Court as it relates to the motion for contempt.[5]

II

The plaintiff next claims that the Appellate Court incorrectly concluded that the trial court improperly modified the unallocated alimony and child support award. Specifically, the plaintiff claims that the Appellate Court incorrectly concluded that the trial court failed to consider what portion of the unallocated award constituted child support and what portion constituted alimony. In response, the defendant asserts that the Appellate Court properly concluded that the trial court incorrectly modified the unallocated award without first making specific findings regarding what portion of the unallocated support order went to child support. We agree with the defendant that the trial court failed to determine what portion of the unallocated award constituted child support and, accordingly, affirm the judgment of the Appellate Court as it relates to the modification of the unallocated award.

We begin by setting forth the applicable standard of review. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case. . . . *Simms* v. *Simms*, 283 Conn. 494, 502, 927 A.2d 894 (2007), quoting *Borkowski* v. *Borkowski*, 228 Conn. 729, 739, 638 A.2d 1060 (1994). In determining whether a trial court has abused its broad discretion in domestic rela-

tions matters, we allow every reasonable presumption in favor of the correctness of its action. . . . *Bender* v. *Bender*, 258 Conn. 733, 740, 785 A.2d 197 (2001). Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law. *Borkowski* v. *Borkowski*, supra, 740. . . . See *In re T.K.*, 105 Conn. App. 502, 506, 939 A.2d 9 ([t]he application of a statute to a particular set of facts is a question of law to which we apply a plenary standard of review), cert. denied, 286 Conn. 914, 945 A.2d 976 (2008); *Unkelbach* v. *McNary*, 244 Conn. 350, 357, 710 A.2d 717 (1998) (interpretation of statutory scheme that governs child support determinations constitutes question of law)." (Internal quotation marks omitted.) *LaFrance* v. *Lodmell*, 322 Conn. 828, 842–43, 144 A.3d 373 (2016); see also *Tuckman* v. *Tuckman*, 308 Conn. 194, 200, 61 A.3d 449 (2013).

## A

The plaintiff claims that the Appellate Court incorrectly concluded that the trial court should have made a specific finding regarding what portion of the initial unallocated order constituted child support before modifying the award. We disagree with the plaintiff.

As this court explained in *Tomlinson*, "[e]ven though an unallocated order incorporates alimony and child support without delineating specific amounts for each component, the unallocated order, along with other financial orders, necessarily includes a portion attributable to child support in an amount sufficient to satisfy the guidelines. Because the child support portion of an otherwise nonmodifiable award can be modified upon a change in custody . . . but the alimony portion cannot, a trial court must determine what part of the original decree constituted modifiable child support and what part constituted nonmodifiable alimony. Given that [t]he original decree [of dissolution] . . . is an adjudication by the trial court as to what is right and proper at the time it is entered . . . the trial court must first determine what portion of the unallocated order represented the child support component at the time of the dissolution. Additionally, because questions involving modification of alimony and support depend . . . on conditions as they exist at the time of the hearing . . . it is necessary to evaluate the parties' present circumstances in light of the passage of time since the trial court's original calculation." (Emphasis omitted; citations omitted; internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 558; see also *Borkowski* v. *Borkowski*, supra, 228 Conn. 737; *Milot* v. *Milot*, 174 Conn. 3, 5, 381 A.2d 528 (1977).

This court has consistently explained that "[t]he guidelines incorporate these statutory rules and contain a 'schedule' for calculating 'the basic child support obli-

gation,' which is based on the number of children in the family and the combined net weekly income of the parents. Regs., Conn. State Agencies § 46b-215a-2b (f). Consistent with General Statutes § 46b-215b (a), the guidelines provide that the support amounts calculated thereunder are the correct amounts to be ordered by the court unless rebutted by a specific finding on the record that the presumptive support amount would be inequitable or inappropriate. Regs., Conn. State Agencies § 46b-215a-3 (a). The finding must include a statement of the presumptive support amount and explain how application of the deviation criteria justifies the variance. Id.; see also General Statutes § 46b-215b (a)." (Emphasis omitted.) *Kiniry* v. *Kiniry*, 299 Conn. 308, 319–20, 9 A.3d 708 (2010). In the present case, the trial court that issued the original order requiring the plaintiff to pay unallocated alimony and child support did not make any findings regarding the amount of child support required under the guidelines or any basis for deviation.[6]

The absence of a specific finding from the court that issued the original order as to the amount of child support did not prevent the trial court from ruling on the plaintiff's motion for modification. Instead, as this court has explained in related contexts, if the court issuing the original support order fails to make the necessary specific findings, the appropriate remedy is for the court hearing the motion for modification to make the necessary findings. For instance, in *Tanzman* v. *Meurer*, 309 Conn. 105, 117–19, 70 A.3d 13 (2013), this court considered whether the trial court appropriately denied a motion for modification of an unallocated alimony and child support order on the basis of a change in the obligor's earning capacity. In *Tanzman*, the trial court had failed to determine the obligor's earning capacity at the time it entered the initial order requiring him to pay unallocated alimony and child support and then denied the subsequent motion to modify. Id., 119. This court concluded that "because the trial court in the present case could not reasonably have concluded that there had been no substantial change in the plaintiff's earning capacity between the time of the original financial award and the motion for modification without ever having determined the plaintiff's specific earning capacity, the trial court abused its discretion when it denied the motion for modification." Id., 117. We further explained that "the remedy when the trial court has indicated that it failed to determine the specific amount of a party's earning capacity at the time of the original financial award is for the trial court to conduct a new hearing on the issue. Just as a party is not bound by an injunction that is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . . a party to a marital dissolution proceeding cannot be forever bound by a finding that is so vague that no reviewing court could

reasonably ascertain whether the finding and, by extension, the legal conclusions based on the finding, were correct, and no trial court could ever reasonably determine whether there has been a substantial change in circumstances for purposes of ruling on a motion for modification pursuant to [General Statutes] § 46b-86." (Citation omitted; footnote omitted; internal quotation marks omitted.) Id., 118–19; see also *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.*, 190 Conn. 371, 409, 461 A.2d 422 (1983). Accordingly, we concluded that "the matter must be remanded to the trial court for a new hearing on the plaintiff's motion for modification at which the trial court should determine, based on evidence presented by the parties, the specific amount of the plaintiff's earning capacity at the time of the original financial award. In addition, because the trial court did not determine the specific amount of the plaintiff's earning capacity at the time that he filed his motion for modification, the court must also determine that amount." (Footnote omitted.) *Tanzman* v. *Meurer*, supra, 120–21.

Similarly, in the present case, in order to address the plaintiff's motion for modification, it was necessary for the trial court to know how much of the original award of unallocated alimony and support was attributed to child support. Because the court that issued the original support order did not make such a finding, the trial court was required to make that determination before ruling on the motion for modification. The trial court did not make any finding regarding what amount of the initial unallocated alimony and support award was attributable to child support. Without knowing what portion of the award was attributable to child support, the trial court could not properly decide the motion for modification.

Accordingly, we conclude that the Appellate Court correctly determined that the trial court improperly modified the unallocated alimony and support order. On remand, the trial court should conduct a hearing to determine, based on evidence presented by the parties, the specific amount of child support required at the time the defendant had primary physical custody of the parties' children. This amount should then be subtracted from the original unallocated order to determine a new alimony award based on the change in circumstances.

B

The plaintiff claims that the Appellate Court incorrectly concluded that the trial court should not have considered the defendant's cohabitation in modifying the unallocated award. We consider this issue to the extent that it is likely to arise again on remand, and conclude that, on remand, the trial court should not consider any information related to the defendant's cohabitation.[7]

"It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact. . . . When the language is clear and unambiguous, however, the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law. . . .

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) *Nation-Bailey* v. *Bailey*, 316 Conn. 182, 191–92, 112 A.3d 144 (2015); see also *Parisi* v. *Parisi*, supra, 315 Conn. 383–84.

In ruling on the motion for modification in the present case, the trial court found that "[t]he defendant made a downward adjustment in her financial affidavit relative to her expenses to account for [her new living arrangements] which . . . provides her with [one-half] of their living expenses." The Appellate Court concluded that the trial court's consideration of the defendant's change in financial circumstances resulting from her cohabitation was improper because it violated the clear terms of the parties' agreement. *Gabriel* v. *Gabriel*,

supra, 159 Conn. App. 814–15. We agree with the Appellate Court.

It is undisputed that the parties' entered into a separation agreement, in which they agreed, in relevant part: "The amount of alimony shall be [nonmodifiable] as to both amount and duration by the [defendant], for any reason.

"The [plaintiff] retains his right to seek a modification of alimony based upon a substantial change of circumstances. The foregoing notwithstanding, for so long as he is paying alimony in accordance with the above percentages, the [plaintiff] waives the right to seek to modify the [defendant's] alimony based upon her cohabitation. He further waives the right to seek a modification of this alimony obligation based solely upon the [defendant's] earnings, so long as her earnings do not exceed $100,000 per annum."

We agree with the Appellate Court that "the terms of the agreement, as it relates to the unallocated alimony and support payments, are unambiguous. The agreement clearly states that the unallocated alimony and support payments are 'for [the defendant's] support' and are nonmodifiable by the defendant as to both amount and duration, but are modifiable by the plaintiff upon a substantial change in circumstances, *not including the defendant's cohabitation or her earnings up to $100,000.*" (Emphasis in original.) *Gabriel* v. *Gabriel*, supra, 159 Conn. App. 813.

The parties' agreement clearly prohibited the plaintiff from seeking modification of alimony on the basis of the defendant's cohabitation. In light of the clear terms of the parties' agreement, therefore, we conclude that *any consideration* of the defendant's cohabitation in ruling on a motion for modification would violate the terms of the parties' agreement. Accordingly, on remand, in making its determination of alimony pursuant to the factors in General Statutes § 46b-82,[8] we conclude that the trial court cannot consider any information related to the defendant's cohabitation, including any change to her financial situation that is a result of the cohabitation.

The judgment of the Appellate Court is reversed with respect to the defendant's motion for contempt and the case is remanded to that court with direction to render judgment affirming the judgment of the trial court. The judgment of the Appellate Court is affirmed with respect to the plaintiff's motion for modification, and the case is remanded to that court with direction to remand the case to the trial court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.

* [Slip date], 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] See footnote 7 of this opinion.

[2] General Statutes § 46b-224 provides in relevant part: "Whenever . . .

the Superior Court, in a family relations matter . . . orders a change or transfer of the guardianship or custody of a child who is the subject of a preexisting support order, and the court makes no finding with respect to such support order, such guardianship or custody order shall operate to: (1) Suspend the support order if guardianship or custody is transferred to the obligor under the support order; or (2) modify the payee of the support order to be the person or entity awarded guardianship or custody of the child by the court, if such person or entity is other than the obligor under the support order."

[3] The defendant asserts that *Miller* v. *Miller*, 181 Conn. 610, 436 A.2d 279 (1980), provides the appropriate framework for reviewing the defendant's claim regarding her motion for contempt. We disagree. *Miller* did not involve a motion for contempt, but instead addressed whether the trial court had jurisdiction to award child support for a child who had reached the age of majority while the dissolution action was pending. Id., 613–14. Accordingly, we find *Miller* to be inapposite to the present case.

[4] Because we conclude that there was not a "court order that was sufficiently clear and unambiguous so as to support a judgment of contempt," we need not reach the question of whether the trial court abused its discretion in determining "whether the violation was wilful or excused by a good faith dispute or misunderstanding." *Parisi* v. *Parisi*, supra, 315 Conn. 380.

[5] The Appellate Court concluded that, although § 46b-224 applied and operated to suspend the plaintiff's child support payments to the defendant, "it certainly would not give a party the right to suspend his alimony obligation. Under the circumstances of this case, it is clear from the court's memorandum of decision that the court reduced the defendant's alimony award and the child support award in the combined total of the plaintiff's unilateral reduction. This demonstrates that the plaintiff's unilateral reduction, in the opinion of the trial court, was not solely in the amount of his court-ordered child support. In other words, relying on § 46b-224, the court found it was not contemptuous for the plaintiff to have suspended some portion of the defendant's alimony award. We conclude that this was an improper reliance on § 46b-224." *Gabriel* v. *Gabriel*, supra, 159 Conn. App. 821. We disagree. As we have explained herein, the defendant's motion for contempt fails on the first prong of our inquiry—whether there was a sufficiently clear and unambiguous order of the trial court upon which to base a finding of contempt. We, therefore, need not address whether the amount by which the plaintiff reduced his support was proper in order to conclude that the trial court correctly denied the defendant's motion for contempt.

[6] The plaintiff asserts that the trial court was not required to apply the child support guidelines in ruling on the plaintiff's motion for modification because the child support guidelines do not apply to alimony orders and the defendant's alimony was the only financial order that was required at that time. Although we agree with the plaintiff that the child support guidelines do not apply to an alimony award, as we explain herein, when the trial court in the present case was considering the motion for modification of the unallocated child support and alimony award, it was necessary for the trial court to consider the guidelines and make a finding as to the portion of the original award that was attributable to child support in order to fashion a new alimony award based on the change in circumstances.

[7] Although we note that the motion for modification was entitled as a motion for modification of child support, the record reflects that it was treated as a motion for modification of both child support and alimony.

[8] General Statutes § 46b-82 provides: "(a) At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order pursuant to subsection (b) of this section or an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. The court may order that a party obtain life insurance as such security unless such party proves, by a preponderance of the evidence, that such insurance is not available to such party, such party is unable to pay the cost of such insurance or such party is uninsurable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education,

employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment.

"(b) If the court, following a trial or hearing on the merits, enters an order pursuant to subsection (a) of this section, or section 46b-86, and such order by its terms will terminate only upon the death of either party or the remarriage of the alimony recipient, the court shall articulate with specificity the basis for such order.

"(c) Any postjudgment procedure afforded by chapter 906 shall be available to secure the present and future financial interests of a party in connection with a final order for the periodic payment of alimony."