******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JANINE LESUEUR *v.* ANDREW LESUEUR
(AC 38300)

DiPentima, C. J., and Prescott and Bear, Js.

*Argued December 7, 2016—officially released May 9, 2017*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Hon. Stanley Novack, judge trial
referee; Tindill, J. [motion to open judgment and for
modification of custody and child support].)

*Harold R. Burke*, for the appellant (defendant).

*Gaetano Ferro*, with whom, on the brief, was *Olivia
M. Hebenstreit*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. In this postdissolution marital matter, the defendant, Andrew LeSueur, appeals from the judgment of the trial court modifying custody and child support orders that had been entered at the time of the dissolution. The defendant contends that the court erred in failing to (1) grant a child support overpayment credit retroactive to any period prior to December 9, 2014, and (2) award child support to the defendant for the time period between June, 2014,[1] and the end of the 2016 school year. We affirm the judgment of the trial court.

We set forth the following facts and procedural history pertinent to this appeal. The plaintiff, Janine LeSueur, married the defendant on November 28, 1992. On January 27, 2011, the marriage was dissolved. At that time, the parties had two minor children: a daughter, born in July, 1997; and a son, born in January, 1999. The judgment of dissolution incorporated the parties' separation agreement that provided that the plaintiff and the defendant would have joint legal custody and the plaintiff primary physical custody of the two children. The separation agreement also provided, inter alia, that the defendant would pay the plaintiff unallocated alimony and child support from March 1, 2011 until June 30, 2020.

In September, 2013, the parties' daughter, who was sixteen years old at the time, started to reside primarily with the defendant.[2] On June 3, 2014, the defendant filed a postjudgment motion to open the judgment of dissolution and for modification of custody and child support, hereinafter referred to as the motion for modification. In that motion, the defendant explained that "[s]ince the date of judgment, the circumstances concerning the custody of the minor children have changed substantially . . . [the daughter], now nearly [seventeen] years old, has stated that she wishes to reside primarily with [the defendant] . . . . By agreement of the parties, [the daughter] has resided temporarily with [the defendant] for nearly nine months and she has found this arrangement to be beneficial. . . . Given that [the] defendant has been financially responsible for [the daughter] during the period that she has resided with him, and will be financially responsible for her should [primary physical] custody of [the daughter] be modified, child support payable from [the] plaintiff to [the] defendant is appropriate and warranted." In addition, the defendant's motion for modification concluded by requesting that the court: (1) modify the primary physical custody of the daughter from the plaintiff to the defendant; (2) afford the plaintiff liberal and flexible parenting time with the daughter; (3) provide a child support award for his care of the daughter; (4) modify the parental notification requirement contained in the separation agreement from four hours to twenty-four

hours; and (5) modify his child support obligation to the plaintiff.

The defendant's motion for modification came before the court, *Tindill, J.*, on May 7, 2015, and the court issued a memorandum of decision on July 31, 2015. In its memorandum of decision, the court set forth the following procedural history relevant to this appeal. The court began by explaining that on July 14, 2014, the parties negotiated an agreement, which the court, *Heller, J.*, approved and entered as an order of the court. "The agreement, among other things, 1) opened the judgment, 2) modified [primary] physical custody of [the daughter] to the defendant, 3) granted liberal and flexible parenting time and telephone contact between [the daughter] and the plaintiff, and 4) marked the remaining issues contained in the motion off to be reclaimed until either a September 10, 2014 status conference or one party notifying the other that [the daughter] living with the defendant was not in her best interests."[3]

At the September 10, 2014 status conference, the court, *Colin, J.*, ordered the parties to complete a family services intake within three weeks, which was delayed until October 9, 2014. After meeting with the family relations counselor, the parties informed the court, on December 5, 2014, that they needed a date to enter the agreement they negotiated with the assistance of family relations. The parties entered a second agreement regarding the pending motion for modification, which was approved and ordered by the court, *Novack, J.*, on December 9, 2014. That "agreement provided for the continuation of the July 14, 2014 [agreement] (the first agreement on the pending motions) so long as the defendant encouraged and fostered a relationship between [the daughter] and [the plaintiff,] and allowed [the daughter] reasonable and flexible access between the parties' homes. The remaining issues in the defendant's motion—new child support orders and the [four] hour parental notification requirement—were not addressed in the two agreements."

On May 7, 2015, the court, *Tindill, J.*, held a hearing on the defendant's motion for modification with respect to, among other things, the plaintiff's child support obligation for the daughter. With respect to the May 7, 2015 hearing, the court in its July 31, 2015 memorandum of decision noted that the parties' "separation agreement contemplates modification for the substantial change in circumstances claimed, namely a change in (one of) the minor children's primary residence." The court then stated that it found "that the custody and parenting arrangement to which the parties stipulated in [their separation agreement] was observed until September, 2013, when it was decided, by mutual agreement of the parents with input from the child's therapist, that their daughter . . . would reside full-time with [the defen-

dant]. The defendant's motion for modification, therefore, is granted."

In determining the amount of child support that was appropriate under the circumstances of this case, the court explained that it considered the Connecticut child support guidelines and the parties' finances. Accordingly, "[t]he court adopts the figure of $170 per week offered by the defendant in his proposed orders for the plaintiff's child support obligation [for the daughter]. The court declines to make a finding regarding what percentage of the January, 2011 unallocated support order[4] should be calculated as child support." The court further stated that although the defendant sought financial orders in his motion for modification, "he did not submit a signed, sworn financial affidavit until ordered to so by the court on May 22, 2015. Prior to June 8, 2015, the most recent financial affidavits filed were those filed on January 27, 2011, at the time of the judgment of dissolution. . . . Given the current ages and level of maturity of the parties' children, the court finds that the notification requirement of the separation agreement should be adjusted." (Footnote omitted.) This appeal followed. Additional facts will be set forth as necessary.

Before addressing the merits of the defendant's appeal, we first set forth our well established standard of review in domestic relations matters. "[T]his court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Citations omitted; internal quotation marks omitted.) *Gabriel* v. *Gabriel*, 324 Conn. 324, 336,    A.3d    (2017). Guided by these principles, we address in turn each of the defendant's claims.

I

The defendant first claims that the court erred in failing to grant a child support overpayment credit retroactive to any period prior to December 9, 2014. The defendant presents two statutory bases to support his claim. He contends that (A) pursuant to General Statutes § 46b-224, the court was obligated to issue a child support credit retroactive to July 14, 2014, which was the date that the court approved the parties' first agreement modifying the primary physical custody of

the daughter on a temporary basis and (B) pursuant to General Statutes § 46b-86 (a), the court abused its discretion in failing to issue a child support credit retroactive to June 30, 2014, which was the date that the defendant's motion for modification was served on the plaintiff.[5] We disagree.

A

We first address the defendant's argument that, pursuant to § 46b-224, the court was obligated to issue a child support credit retroactive to July 14, 2014, the date that the court approved the parties' first agreement modifying the primary physical custody of the daughter on a temporary basis. Specifically, the defendant contends that the court failed to apply § 46b-224, which permitted him, as the obligor of child support, to suspend child support payments upon the court's issuance of the order modifying custody of the daughter on July 14, 2014. Therefore, he argues, his child support obligation for the daughter should have been modified retroactive as of July 14, 2014, rather than December 9, 2014. We are not persuaded.

"Section 46b-224 specifically addresses the question of how a change in custody affects the payment of child support . . . ." *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 549, 46 A.3d 112 (2012). Under § 46b-224: "Whenever . . . the Superior Court, in a family relations matter, as defined in section 46b-1, orders a change or transfer of the guardianship or custody of a child who is the subject of a preexisting support order, and the court makes no finding with respect to such support order, such guardianship or custody order shall operate to: (1) [s]uspend the support order if guardianship or custody is transferred to the obligor under the support order; or (2) modify the payee of the support order to be the person or entity awarded guardianship or custody of the child by the court, if such person or entity is other than the obligor under the support order. Thus, if the obligor becomes the new primary custodial parent, the obligor is no longer required to pay child support to the former custodian. . . . The immediate result in either case is the same: the originally designated payee who no longer has custody of the child does not continue to receive support payments following the change in custody, and the payments are retained by or redirected to the party who does have custody." (Internal quotation marks omitted.) Id., 549–50.

Moreover, "[m]odification, including retroactive modification, of a child support order upon a change of custody under § 46b-224, comports with the default rule that child support follows the children, unless the trial court has made a finding that another arrangement is appropriate." (Internal quotation mark omitted.) *Coury* v. *Coury*, 161 Conn. App. 271, 299, 128 A.3d 517 (2015). For example, in *Tomlinson*, our Supreme Court expressly noted that: "Child support . . . furnishes the

custodian with the resources to maintain a household to provide for the care and welfare of the children; in essence, the custodian holds the payments for the benefit of the child. Consequently, once custody changes, there is no immediately apparent reason for the former custodian to continue to receive the payments because the presumption is that the former custodian is no longer primarily responsible for providing the children's necessary living expenses, including food, shelter and clothing. In turn, permitting the diversion of funds away from the parent providing for the care and well-being of minor children when custody changes, pursuant to the parents' contractual agreement, would contravene the purpose of child support." *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 555.

Turning to the present case, the defendant argues that the court did not give proper effect to § 46b-224[6] when it modified his child support obligation retroactive to December 9, 2014, instead of the date that the custody of the daughter was modified by a court order on July 14, 2014. Specifically, the defendant's brief provides: "[H]ad the defendant's child support obligation for [the daughter] been clearly identified in a separate child support order, § 46b-224 would have permitted him to suspend all child support payments upon the issuance of the July 14, 2014 order. However, given that the child support component of an unallocated order must first be ascertained before payments may be permissibly suspended . . . the only manner by which § 46b-224 can be given effect is through the issuance of a full credit for overpayments occurring during the relevant period."[7] (Citation omitted.) We are not persuaded.

Although on July 14, 2014, the court approved and entered as an order of the court the parties' agreement that modified the primary physical custody of the daughter, this agreement, by its terms, modified the custody of the daughter solely *on a temporary basis* and that the plaintiff continued to pay for the daughter's necessary living expenses after that date. Further, it is § 46b-86, rather than § 46b-224, which provides the court with the discretion to determine the most appropriate date of retroactivity for child support awards. See *Hane* v. *Hane*, 158 Conn. App. 167, 172–73, 118 A.3d 685 (2015).

With respect to our conclusion, we acknowledge that there were multiple agreements modifying the custody of the daughter during the pendency of the defendant's motion for modification. According to the parties' first agreement dated July 14, 2014, the primary physical custody of the daughter was modified on a temporary basis. The parties' second agreement dated December 9, 2014, modified the primary physical custody of the daughter on a permanent basis by continuing the order of the July 14, 2014 agreement. In approving the parties'

second agreement and entering it as an order, the court explained that December 9, 2014 was the date that "the defendant knew or reasonably should have known . . . that the living arrangement with his daughter was no longer temporary . . . ."

In addition, the record from the May 7, 2015 hearing on the defendant's motion for modification supports the court's decision to modify the defendant's child support obligation retroactive to December 9, 2014, rather than July 14, 2014. As discussed in part I B of this opinion, the record also reveals that the plaintiff continued to provide monetary support for the daughter's necessary living expenses after the parties entered into the July 14, 2014 agreement. Specifically, at the May 7, 2015 hearing, the plaintiff testified that she continued to pay for part of the daughter's school tuition, she provided the daughter with a monthly allowance, she purchased her clothing, she provided and paid for a credit card for her daughter, she paid her daughter's cell phone bill, she maintained a bedroom for her daughter at her house, and she had her daughter over for weekly dinners. Although our Supreme Court previously has stated in *Tomlinson*, that "once custody changes, there is no immediately apparent reason for the former custodian to continue to receive the payments because the presumption is that the former custodian is no longer primarily responsible for providing the children's necessary living expenses," in the present case the plaintiff's testimony rebuts such a presumption as there was undisputed evidence indicating that she continued to have expenses associated with the daughter's care after entering into the July 14, 2014 agreement. See *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 555.

For the foregoing reasons, we conclude that the court did not abuse its discretion in modifying the defendant's child support obligation retroactive to December 9, 2014, rather than to July 14, 2014, because it reasonably determined that December 9, 2014, was the proper date given that as of that date the primary physical custody of the daughter "*was no longer temporary*." (Emphasis added.)

B

We next address the defendant's argument that, pursuant to § 46b-86 (a), the court should have issued a child support credit retroactive to June 30, 2014, the date that his motion for modification was served. We disagree.

The defendant's motion for modification was brought pursuant to § 46b-86 (a), which "governs the availability of retroactive modification of unallocated alimony and child support orders." *Cannon* v. *Cannon*, 109 Conn. App. 844, 849, 953 A.2d 694 (2008). According to § 46b-86 (a), "[n]o order for periodic payment of permanent alimony or support may be subject to retroactive modifi-

cation, except that the court may order modification with respect to *any* period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party . . . . We have held previously that parties must comply strictly with § 46b-86 (a) before a court may determine whether to retroactively modify support orders." (Emphasis added; internal quotation marks omitted.) *Coury* v. *Coury*, supra, 161 Conn. App. 294.

Although there is no bright line test for determining the date of retroactivity of child support payments, this court has set forth factors that may be considered. Specifically, in *Hane*, we expressly noted that a "retroactive award may take into account the long time period between the date of filing a motion to modify, or . . . the contractual retroactive date, and the date that motion is heard . . . . The court may examine the changes in the parties' incomes and needs during the time the motion is pending to fashion an equitable award based on those changes." (Internal quotation marks omitted.) *Hane* v. *Hane*, supra, 158 Conn. App. 176. Moreover, § 46b-86 (a) accords deference to the trial court by permitting it to make a modification to a party's child support obligation retroactive to "*any* period during which there is a pending motion for modification." (Emphasis added.)

In the present case, the defendant's motion for modification was served on June 30, 2014, and was pending until the court issued its memorandum of decision on July 31, 2015. See *Lucas* v. *Lucas*, 88 Conn. App. 246, 255–57, 869 A.2d 239 (2005) (motion for modification was pending for purposes of retroactivity when initial motion was undecided and relief sought did not change from initial motion for modification to amended motion for modification). During the time that the motion for modification was pending, the court approved and entered as an order the parties' July 14, 2014 agreement, which modified the primary physical custody of the daughter on a temporary basis. On December 9, 2014, the court ordered the change in custody of the daughter on a permanent instead of a temporary basis. In its memorandum of decision, the court expressly explained its rationale for deciding to modify the defendant's child support obligation retroactive to December 9, 2014, by stating that this was the date that "the defendant knew or reasonably should have known on this date, when he made a second agreement with the plaintiff mother regarding modification of [the primary] physical custody of [the daughter], that the living arrangement with his daughter was no longer temporary . . . ."

We conclude that a modification to the defendant's child support obligation retroactive to December 9, 2014, rather than to June 30, 2014, was permissible

under the statute and well within the discretion of the court. The plain language of § 46b-86 (a) does not require the court to make a modification [retroactive] to the date of service of the motion. Rather, § 46b-86 (a) provides in relevant part: "[T]he court *may* order modification retroactive with respect to *any* period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion . . . ." (Emphasis added.) In addition, this court previously has explained that an order that modified child support on a temporary basis was not considered a final order and was thus still pending for purposes of retroactivity. See *Esposito* v. *Banning*, 110 Conn. App. 479, 483–85, 955 A.2d 609, cert. denied, 289 Conn. 946, 959 A.2d 1011 (2008).

We further conclude that the court acted within its discretion when it ordered the modification of the defendant's child support obligation retroactive to December 9, 2014. First, the defendant's motion for modification did not expressly request the court to make any modification retroactive to the date of service; rather, the record indicates that the first time that he asked for a retroactive modification was at the February 25, 2015 hearing,[8] which was eight months after the motion for modification was served. Next, during the May 7, 2015 hearing on the defendant's motion for modification, the plaintiff testified that after the parties entered the July 14, 2014 agreement, she had continued to pay for many of the daughter's day-to-day expenses, which included her monthly allowance, food, clothing and her cell phone bill, as well as expenses associated with a family vacation and shelter expenses. The plaintiff's expenses largely remained the same as the daughter still had her bedroom at the plaintiff's house and would come over for weekly dinners. Third, in determining that December 9, 2014, was the proper date for retroactivity, the court reasoned that that was the date in which it found the primary physical custody of the daughter to be no longer temporary.

In addition, the court did not have the information necessary to make its child support orders retroactive to June 30, 2014, because the parties did not submit financial affidavits at or close to that date, nor did the defendant file a child support guidelines worksheet as required under § 46b-215b. See *Malpeso* v. *Malpeso*, 165 Conn. App. 151, 166, 138 A.3d 1069 (2016) (child support guidelines "shall be considered in *all* determinations of child support award amounts" [emphasis in original]). The court also made a note of this in its memorandum of decision, where it stated: "Though the defendant seeks financial orders in the instant motion, he did not submit a signed, sworn financial affidavit until ordered to do so by the court on May 22, 2015. Prior to June 8, 2015, the most recent financial affidavits filed were those filed on January 27, 2011, at the time of the judgment of dissolution." (Footnote omitted.) Thus, the par-

ties did not provide the court with a sufficient factual basis for it to evaluate their financial circumstances or the changes in their needs at the time the motion for modification was served on June 30, 2014.

To summarize, we emphasize that it is well within the court's discretion to make a modification retroactive to "*any* period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party . . . ." (Emphasis added; internal quotation marks omitted.) *Coury* v. *Coury*, supra, 161 Conn. App. 294; see also General Statutes § 46b-86 (a). As the motion for modification was pending from June 30, 2014 until July 31, 2015, the court had the discretion to make the child support modification retroactive to any time during those eleven months that was reasonably supported by the record. In its orders, the court modified the defendant's child support obligation retroactive to December 9, 2014, rather than the date that the motion was served on June 30, 2014, because it found that December 9, 2014, was the date when his primary physical custody of the daughter was no longer temporary. Therefore, given the circumstances of this case, it was not an abuse of discretion for the court to order the modification of the defendant's child support obligation retroactive to December 9, 2014.

II

The defendant next claims that the trial court erred in failing to award him child support for the time period between June, 2014,[9] and the end of the 2016 school year. In particular, the defendant contends that in its July 31, 2015 orders, the court made no provision pertaining to the daughter's child support or the parties' child support obligation for the daughter after July 31, 2015. We are not persuaded that the court erred.

We begin by setting forth the applicable legal principles relevant to this claim. Pursuant to General Statutes § 46b-84 (b), "[i]f there is an unmarried child of the marriage who has attained the age of eighteen and is a full-time high school student, the parents shall maintain the child according to their respective abilities if the child is in need of maintenance until such child completes the twelfth grade or attains the age of nineteen, whichever occurs first."

A review of the record demonstrates that according to the parties' separation agreement, the amount that the defendant had agreed to pay the plaintiff as unallocated alimony and child support was reduced beginning on July 31, 2015. On that same day, the court granted the defendant's motion for modification. In its memorandum of decision, the court, in considering the statutory criteria, explained: "The Connecticut child support guidelines provide for a presumptive child support

award of $985 per week (up until July 1, 2015) for two children in a split custody arrangement based upon the parties' combined net weekly income of $11,710 of which the defendant's income comprises 86 [percent]. The Connecticut child support guidelines provide for a presumptive child support award of $1004 per week (from July 1, 2015 forward) for two children in a split custody arrangement based upon the parties' combined net weekly income of $11,710 of which the defendant's income comprises 86 [percent]. Because the parties' combined net weekly income exceeds $4000, the court articulate[d] the following grounds for deviation based on the evidence submitted: the defendant[']s] earning capacity, coordination of total family support—specifically, the division of assets and liabilities, provision of alimony and tax planning considerations, and the parties' each having physical custody of one of their children. See § 46b-215a-3 (b) (5) and § 46b-215a-3 (b) (4) (C) of the Child Support and Arrearage Guidelines Regulations. The court adopts the figure of $170 per week offered by the defendant in his proposed orders for the plaintiff's child support obligation."

The court then entered the following orders: (1) "[t]he defendant is awarded retroactivity to December 9, 2014. The amount of child support for which he is responsible for December 9, 2014 to July 31, 2015 (34 weeks) is $27,805;" (2) "[c]ommencing September 1, 2015, the defendant shall pay to the plaintiff the required amount of support pursuant to the January 27, 2011 separation agreement, $51,806.40 (per calendar year) of which represents child support to the plaintiff for one minor child;" (3) "[t]he plaintiff shall reimburse the defendant $27,805 no later than September 1, 2015;" and (4) "[a]ll other provisions of the parties' agreement[10] should remain undisturbed at this time as they were intended by the parties and negotiated and agreed upon with the advice of legal counsel."[11]

The court did not expressly indicate in its orders whether the plaintiff was obligated to provide the defendant child support for his care of the daughter after July 31, 2015. Under our rules of practice, "[i]t is the responsibility of the appellant to provide an adequate record for review." Practice Book § 61-10; see also Practice Book § 66-5. Absent evidence to the contrary, we assume that the trial court acted properly. *Decastro* v. *Odetah Camping Resort, Inc.*, 170 Conn. App. 581, 588 n.2, A.3d (2017) ("we are entitled to assume, unless it appears to the contrary, that the trial court . . . acted properly"); *Keller* v. *Keller*, 167 Conn. App. 138, 147, 142 A.3d 1197 ("absent evidence to contrary, we assume that court acted properly"), cert. denied, 323 Conn. 922, 150 A.3d 1151 (2016). Accordingly, we assume that the court found that the plaintiff had no child support obligation to the defendant for his care of the daughter after July 31, 2015. See id.

The record contains evidence to support that finding. As discussed in the preceding paragraph, in addition to finding the plaintiff's presumptive child support obligation of $170, the court set forth the grounds for deviating from the presumptive child support amount based on the evidence submitted at the May 7, 2015 hearing. The grounds for deviation included, inter alia, "the defendant father's earning capacity, coordination of total family support—specifically, the division of assets and liabilities, provision of alimony and tax planning considerations, and the parties' each having physical custody of one of their children." The record also reveals that the parties' separation agreement provides for a reduction in the percentages of the defendant's unallocated alimony and child support obligation, effective July 31, 2015. Finally, as noted earlier in this opinion, there was evidence before the court at the May 7, 2015 hearing of the plaintiff's continued financial support of the daughter, notwithstanding the change in primary physical custody. Based on the record that we have before us, we cannot conclude that the court abused its discretion by not entering an order that the plaintiff pay child support to the defendant for his care of the daughter after July 31, 2015, until the end of the 2016 school year.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We note that the defendant claims that the court improperly declined to award him child support for the time period between June, 2014 and the end of the 2016 school year. In part I of this opinion, however, we conclude that the court did not abuse its discretion in modifying the defendant's child support obligation retroactive to December 9, 2014, rather than to June 30, 2014, or July 14, 2014. Accordingly, in part II of this opinion, we address only whether the court erred in failing to award child support to the defendant for the time period of July 31, 2015, until the end of the 2016 school year pertaining to his care of the daughter.

[2] In September, 2013, both parties consented to this informal modification of the parenting plan, set forth in the separation agreement, where the daughter would now reside full-time with the defendant. The court noted that this arrangement was in the best interest of the daughter.

[3] Although the remaining issues in the defendant's motion for modification were marked off after July 14, 2014, the relief requested therein pertaining to child support remained undecided.

[4] On appeal, neither party challenges the court's decision to decline to make a finding regarding what percentage of the January 27, 2011 unallocated alimony and child support order should be calculated as child support.

[5] We note that "§ 46b-86 requires that a party file a motion showing a substantial change in circumstances in order to modify a final order of support." *Kalinowski* v. *Kropelnicki*, 92 Conn. App. 344, 350, 885 A.2d 194 (2005). In this case, it is undisputed that there was a substantial change in circumstances, namely, the change in the primary physical custody of the daughter from the plaintiff's residence to the defendant's residence.

[6] Specifically, the defendant contends that § 46b-224 protects against situations in which a parent may retain child support overpayments as tax free alimony.

[7] In his appellate brief, the defendant asserts that *Gabriel* v. *Gabriel*, 159 Conn. App. 805, 821, 123 A.3d 453 (2015), rev'd in part on other grounds by *Gabriel* v. *Gabriel*, 324 Conn. 324,      A.3d      (2016), provides that the only manner by which § 46b-224 can be given effect is through the issuance of a full credit for overpayments occurring during the relevant period. We disagree. *Gabriel* did not allude to this point, but instead addressed whether the court improperly (1) "reduced the defendant's alimony award and the

child support award in the combined total of the plaintiff's unilateral reduction" and (2) found, in reliance on § 46b-224, that "it was not contemptuous for the plaintiff to have suspended some portion of the defendant's alimony award." *Gabriel* v. *Gabriel*, supra, 159 Conn. App. 821. In the defendant's appellate brief, however, he does not appear to assert that the court erred by modifying the unallocated support award, but rather that the court improperly modified the unallocated support award retroactively only from December 9, 2014. Accordingly, we find *Gabriel* to be inapposite to the present case. We further note that the defendant did not cite to *Gabriel* v. *Gabriel*, 324 Conn. 324,      A.3d      (2016), in his appellate brief.

[8] The February 25, 2015 hearing was a continuance of the hearing on the defendant's motion for modification that was originally scheduled for January 9, 2015.

[9] See footnote 1 of this opinion.

[10] We believe that the court is referring to the parties' January 27, 2011 separation agreement, which provided that the defendant's unallocated alimony and child support obligation was to be reduced on July 31, 2015.

[11] The court entered three other orders that are not relevant to this appeal.