******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

DON TRUSKAUSKAS *v.* ZONING BOARD OF APPEALS
OF THE TOWN OF HARWINTON
(AC 39999)

Alvord, Elgo and Bright, Js.

*Syllabus*

The plaintiff appealed to the trial court from two decisions by the defendant,
the Zoning Board of Appeals of the Town of Harwinton, ordering him to
cease and desist from the use of his residential property for commercial
purposes in violation of the town's zoning regulations. Two owners of
property that abuts that of the plaintiff then intervened in both of the
plaintiff's appeals, which were thereafter consolidated by the trial court.
The plaintiff, the intervenors and the zoning board then entered into a
stipulation, which became the judgment in each case and provided, inter
alia, that the plaintiff could not conduct commercial activities at his
residential property or use his dump truck there as part of his contracting
business or for other commercial purposes. The intervenors thereafter
moved for an order of contempt, claiming, inter alia, that the plaintiff
had violated certain provisions of the stipulated judgments by continuing
to conduct commercial activities at his residence and by failing to remove
certain commercial equipment from the property. The trial court granted
the motion for contempt, and the plaintiff appealed to this court, claiming
that the trial court erroneously interpreted the stipulation to encompass
a total prohibition against the use of his dump truck for any commercial
purposes, including those that occurred off of his property and, thus,
improperly found him in contempt. *Held* that the trial court's finding
that the plaintiff was in contempt was not clearly erroneous, as the
record supported the court's determination that the plaintiff wilfully
violated certain provisions of the stipulation that prohibited him from
conducting commercial activities at his residential property and using
his dump truck there as part of his contracting business or for other
commercial purposes: the plaintiff's admission under oath that he used
the dump truck to haul heavy equipment at his residence to job sites
was a clear violation of the stipulation and was consistent with evidence
that included a log book, photographs and videos of the plaintiff's activi-
ties, which had been compiled by the intervenors, that showed his use
of the dump truck to move equipment on and off of his property princi-
pally for commercial purposes, the plaintiff did not dispute the court's
references to how many times the dump truck came to and went from
his property as evidence that it was being used commercially, and the
court found that he used his home address as his business address in
tax and secretary of the state filings, that he owned no other property
on which to store his commercial property, and that he had not removed
permanently from his property certain heavy equipment that he used
there; moreover, even if the court interpreted the stipulation too broadly,
the plaintiff agreed that it clearly prohibited him from using the dump
truck on the subject premises for his contracting business or for other
commercial purposes.

Argued October 23, 2018—officially released January 15, 2019

*Procedural History*

Appeals from the decisions by the defendant ordering
the plaintiff to cease and desist certain activities on
certain of his real property, brought to the Superior
Court in the judicial district of Litchfield, where the
court, *Pickard, J.*, granted the motions filed by Jessica
Genovese et al. to intervene in both appeals; thereafter,
the appeals were consolidated, and the court, *Danaher,
J.*, approved the parties' stipulations for judgments in
both appeals and rendered judgments thereon; subse-
quently, the court, *J. Moore, J.*, granted in part the

motion for contempt filed by the intervenors, and the plaintiff filed a consolidated appeal with this court. *Affirmed.*

*Don Truskauskas*, self-represented, the appellant (plaintiff).

*Thomas W. Mott*, for the appellees (intervenors).

*Opinion*

BRIGHT, J. The plaintiff, Don Truskauskas, appeals from the judgments of the trial court finding him in contempt[1] for violating the terms of a stipulated judgment involving himself, the defendant, the Zoning Board of Appeals of the Town of Harwinton (board), and the intervenors, Ronald Genovese and Jessica Genovese, who own property abutting that of the plaintiff.[2] On appeal, the plaintiff claims that the court improperly interpreted the March 30, 2016 stipulated judgment and found that he wilfully had violated the stipulated judgment.[3] We affirm the judgments of the trial court.

The following facts and procedural history, which are ascertained from the record and the trial court's memorandum of decision, inform our review. The court found: "[These cases] arose as [appeals] from orders issued against the plaintiff by the [board]. On appeal, the [board] confirmed that [the] plaintiff was using his residential property for commercial use in violation of the Harwinton Zoning Regulations [regulations]. To resolve [these cases after the plaintiff appealed from the board's decisions to the Superior Court], the parties entered into a joint stipulation. After [the court] conducted a canvass of, inter alia, the plaintiff, the joint stipulation was entered as a judgment of the court on March 30, 2016.

"The joint stipulation, now the judgment, provide[s], in [relevant] part . . .

"1. The plaintiff could not conduct any commercial activities at his residential property, including activities related to his contracting business, Autumn Contracting, LLC. This provision, however, did not 'apply to . . . other activities as permitted by the [regulations]' [as set forth in paragraph 2 of the judgment].

"2. The plaintiff's 2000 Mack Dump Truck [(dump truck)] could be parked overnight at his residence in accordance with a previous [board] decision, and could be used for farm or personal use, but this dump truck could not be used for the plaintiff's contracting business or other commercial purposes [as set forth in paragraph 5 of the stipulated judgment].

"3. The plaintiff was required permanently to remove from his residential property all 'equipment, tools, and/or materials used for [the] plaintiff's contracting business or any other commercial activity . . . within seven (7) calendar days after [the] stipulated judgment is fully executed, and shall be maintained by [the] plaintiff off the subject premises.' This provision did not apply 'to tools kept in the plaintiff's pickup truck that are used for his contracting business or other tools or equipment as allowed by the [r]egulations' [as set forth in paragraph 3 of the stipulated judgment].

"4. The plaintiff shall be able to use his residential

property as he wishes as long as he complies with the stipulated judgment, 'the [regulations], and other applicable law' [as set forth in paragraph 8 of the stipulated judgment].

"The judgment also permitted the plaintiff to conduct farming operations on, and to maintain the farm equipment specified in exhibit A at, his residential property. This farm equipment was further depicted in photographs appended to the stipulated judgment.

"The [intervenors] moved for an order of contempt, arguing that the plaintiff has violated several aspects of the [stipulated] judgment. Specifically, they claimed that the plaintiff has violated (1) paragraph 2 by continuing to conduct commercial activities at his residence, (2) paragraph 3 by failing to remove commercial, nonexempted equipment from the residential property, and (3) paragraphs 2 and 5 by regularly moving heavy equipment in and out of his residential property.

"The plaintiff denied that he had conducted, after the judgment, commercial activities at his residence. Moreover, the plaintiff claimed that he maintained certain heavy equipment at his residence so that he could conduct permitted activities, namely, building a large storage barn and a pool there. Specifically, the plaintiff claimed that he, after the date of judgment, used heavy equipment to bring fill to his residential property and to smooth the fill to level the ground so that he could construct the storage barn. Finally, the plaintiff argued that some of the allegedly contemptuous activity was otherwise allowed by the town [of Harwinton] (1) by means of prior zoning rulings, or (2) because he undertook such activity for his personal use."

Following a hearing, the court found that the plaintiff wilfully had violated the stipulated judgment "by continuing to conduct his commercial enterprise out of his residential property and by using his [dump truck] for commercial purposes." Specifically, the court found that the plaintiff was in contempt for violations of paragraphs 2 and 5 of the stipulated judgment. This appeal followed.

On appeal, the plaintiff claims in relevant part that the court improperly interpreted paragraph 5 of the March 30, 2016 stipulated judgment and improperly found that he wilfully had violated the stipulated judgment. We are not persuaded.

"The court has an array of tools available to it to enforce its orders, the most prominent being its contempt power. Our law recognizes two broad types of contempt: criminal and civil. . . . The two are distinguished by the type of penalty imposed. . . . A finding of criminal contempt permits the trial court to punish the violating party, usually by imposing an unconditional fine or a fixed term of imprisonment. . . . Criminal contempt penalties are punitive in nature and

employed against completed actions that defy the dignity and authority of the court. . . . Civil contempt, by contrast, is not punitive in nature but intended to coerce future compliance with a court order, and the contemnor should be able to obtain release from the sanction imposed by the court by compliance with the judicial decree. . . . A civil contempt finding thus permits the court to coerce compliance by imposing a conditional penalty, often in the form of a fine or period of imprisonment, to be lifted if the noncompliant party chooses to obey the court. . . .

"To impose contempt penalties, whether criminal or civil, the trial court must make a contempt finding, and this requires the court to find that the offending party wilfully violated the court's order; failure to comply with an order, alone, will not support a finding of contempt. . . . Rather, to constitute contempt, a party's conduct must be wilful. . . . A good faith dispute or legitimate misunderstanding about the mandates of an order may well preclude a finding of wilfulness. . . . Whether a party's violation was wilful depends on the circumstances of the particular case and, ultimately, is a factual question committed to the sound discretion of the trial court." (Citations omitted; footnote omitted; internal quotation marks omitted.) *O'Brien* v. *O'Brien*, 326 Conn. 81, 97–98, 161 A.3d 1236 (2017).

"Consistent with the foregoing, when we review such a judgment, we first consider the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing . . . a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful . . . ." (Citations omitted; internal quotation marks omitted.) *Gabriel* v. *Gabriel*, 324 Conn. 324, 330–31, 152 A.3d 1230 (2016).

The plaintiff claims that the court misinterpreted paragraph 5 of the stipulated judgment and improperly found that he wilfully had violated paragraphs 2 and 5 of the stipulated judgment. The plaintiff argues that paragraph 5 prohibits him from using his dump truck for commercial purposes *only on the premises*, but contains no prohibition against him using the dump truck for commercial purposes off the premises. He contends that the court erroneously interpreted paragraph 5 to encompass a total prohibition against the plaintiff's use of the dump truck for any commercial purposes, even those that occur off-site, and that this misinterpretation is what led the court to find a violation of both paragraphs 2 and 5 of the stipulated judgment. We are not persuaded by this argument.

In this case, although the board held that *the overnight parking* of the plaintiff's dump truck was a nonconforming use,[4] it also found that the plaintiff was operating a commercial business from his residential property in violation of §§ 1.3.1[5] and 4.1[6] of the regulations.[7]

After the plaintiff appealed to the Superior Court from two separate but related decisions of the board, the parties entered into the joint stipulation, which became a judgment of the court. Paragraph 2 of that judgment provides in relevant part: "The plaintiff will not conduct any commercial activities at the subject premises, including, but without limitation, and specifically any and all activities related to the plaintiff's contracting business . . . . The plaintiff will not conduct, or allow to be conducted, any commercial activities whatsoever, especially those related to his contracting business on the subject premises." Paragraph 5 of that judgment provides: "The plaintiff's 2000 [dump truck] may be parked overnight at the subject premises as a legal, nonconforming use in accordance with the [board's] decision and in compliance with the [regulations] pertaining to nonconforming uses and restrictions on nonconforming uses; provided, however, said vehicle shall not be utilized on the subject premises for the plaintiff's contracting business or other commercial purposes, but may be used for farm or personal use on the subject premises or elsewhere."

The court found that the plaintiff wilfully violated these paragraphs of the stipulated judgment. In particular, on the basis of a log book, photographs and videos of the plaintiff's activities compiled by the intervenors, the court found that the plaintiff was using his dump truck to move equipment on and off of his property principally for commercial, as opposed to personal or farming, purposes. The court further relied on the plaintiff's admission that he attached a trailer to the dump truck to haul his pickup truck to various job sites, confirming that he was using the dump truck for commercial purposes. Finally, the court found that the plaintiff used his home address as his business address in tax and secretary of the state filings, owned no other property on which to store his commercial property and had not removed permanently from his property various pieces of heavy equipment, including the commercial trailer he regularly attached to the dump truck to haul his pickup truck or heavy equipment to and from the property.

The court concluded that the previously discussed facts proved that the plaintiff wilfully violated paragraph 2 of the stipulated judgment because he "was wilfully conducting commercial activities at his residential property . . . ." The court concluded that the plaintiff violated paragraph 5 of the stipulated judgment because he "admitted under oath that he would attach

the trailer *at his home* to the [dump truck] and place the white pickup truck on the trailer to drive to job sites . . . ." (Emphasis added.) The court noted that this admission was confirmed by the evidence submitted by the intervenors.

The plaintiff claims that the court misinterpreted paragraph 5 as prohibiting any commercial use of the dump truck, even off-site, and that this misinterpretation led the court to conclude that he had violated the two provisions of the stipulated judgment. We conclude that even if we were to agree that the court interpreted paragraph 5 too broadly, that paragraph, nonetheless, clearly prohibits the plaintiff from using his dump truck on the subject premises for his contracting business or for other commercial purposes. The plaintiff, in fact, agrees that paragraphs 2 and 5 prohibit him from engaging in such activity at his residence. Considering that explicit prohibition in the stipulated judgment, namely, using the dump truck for his contracting business or for other commercial purposes on his residential property, we conclude that the court's finding of contempt was not clearly erroneous.

The court found in relevant part, and the record supports, that the plaintiff was using his dump truck for his contracting business at his residence. In fact, the plaintiff states in his brief that "[t]he court [made] several references as to how many times the [dump] truck is coming and going from the property as evidence that it [is] being used commercially; the plaintiff did not and does not dispute this fact."[8] During oral argument before this court, the plaintiff also admitted that, while at his residential property, he repeatedly attached a trailer to the dump truck, placed heavy equipment on that trailer, and used the dump truck to haul that heavy equipment to various job sites for use in his contracting business. This, in and of itself, evinces use of the dump truck, while on the plaintiff's residential property, for the plaintiff's contracting business, which is a clear violation of the stipulated judgment. The plaintiff's admission also is consistent with the evidence relied on by the court. Accordingly, we conclude that the court properly found the plaintiff in contempt.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] The judgments of contempt were rendered in two companion cases, Docket Nos. CV-14-6011019-S and CV-14-6011527-S, both bearing the same case title and relating to the same parties. These cases were consolidated by the Superior Court on May 4, 2015. Each case relates to a different decision of the Zoning Board of Appeals of the Town of Harwinton, from which the plaintiff appealed to the Superior Court. The same March 30, 2016 stipulated judgment was rendered in each case. This appeal is taken from the court's judgments of contempt for the plaintiff's violation of the stipulated judgments that had been rendered in each case. In this appeal, because the cases were consolidated, for convenience and to avoid confusion, we generally will refer to the stipulated judgments and the contempt judgments in the singular.

[2] Although all parties have appeared for purposes of this appeal, the board notified this court that it would not file an appellate brief because it

concluded that the appeal did not pertain directly to it.

[3] The plaintiff also claims that the court (1) improperly limited the use of his dump truck, which the board had recognized as a nonconforming use, and (2) improperly "coached" the intervenors at trial.

As to the first claim, the plaintiff argues that the board's decision "clearly state[d] [that] the [dump] truck [was a] legal nonconforming use. . . . The court's insistence that the [dump truck] not be used for commercial use off the property constitutes an illegal taking from the plaintiff!" The plaintiff, however, fails to set forth any law, legal analysis, or legal argument beyond this bald assertion regarding a constitutional taking. Accordingly, this claim is briefed inadequately and will not be addressed. See, e.g., *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 444 n.40, 35 A.3d 188 (2012) (claims not mentioned or briefed beyond bare assertion, or that consist of conclusory assertions with no mention of relevant authority, are inadequately briefed).

As to the second claim, the entirety of the plaintiff's briefing of this issue is one paragraph long, containing a mere six lines of text, which fails to set forth any law, legal analysis, or legal argument. Accordingly, we conclude that this claim also is briefed inadequately. See id.

Additionally, the plaintiff raises, for the first time on appeal, a claim that the notice of violation and the cease and desist order that had been issued by the board or the town zoning enforcement officer were invalid because they did not list his wife, who jointly owns the property and the business. Because the plaintiff entered into a stipulated judgment resolving the notice of violation and the cease and desist order, the fact that his wife was not listed on those documents is irrelevant to the plaintiff's own violation of the stipulated judgment to which he was a party.

[4] Section 6.20 of the regulations prohibits, with certain exceptions, the overnight parking of commercial vehicles weighing in excess of 19,500 pounds. In his appeals to the Superior Court, the plaintiff acknowledged that his dump truck weighed in excess of 19,500 pounds.

Specifically, § 6.20 of the regulations provides: "Commercially operated or commercially registered vehicles having a gross vehicle weight in excess of 19,500 pounds or greater than two axles are not allowed to park or be stored on private property in a residential zone overnight except when:

"They are providing a service related to the property where they are parked or kept overnight.

"They are in conjunction with the need for an emergency repair, but only on an occasional basis.

"On-call vehicles (Municipal, Water Co., CL&P, Gas Co., Service Vans, etc.) shall be exempt from this regulation. Farm vehicles, as listed as Code 4 with the Harwinton Assessor's office, in conjunction with a farm are also exempt.

"In accordance with the above three exceptions the following shall apply:

"One commercial vehicle shall be permitted per property.

"The commercial vehicle must be operated only by owner of the vehicle who derives his livelihood from the operation of the vehicle and not family members or employees.

"The number of trips permitted in a 24-hour period is six (6) which means no more than three (3) round trips to the residential home where the vehicle is permitted to be parked onsite.

"Commercial vehicles cannot idle for more than 15 minutes."

[5] Section 1.3.1 of the regulations provides in relevant part: "Any use which is not specifically permitted in a zone is prohibited and any use that is not specifically permitted in any zone is prohibited in the entire Town."

[6] Section 4.1 of the regulations sets forth the permitted uses in residential zones, and §§ 4.2 and 4.3 set forth the uses that are allowed by special permit.

Specifically, § 4.1 of the regulations provides in relevant part: "In the residential zones (CR, TR, LH, LHA) buildings and land may be used and buildings may be erected, altered or moved, to be used for the following permitted uses:

"a. Single family dwellings.

"b. Agricultural and horticultural uses, provided only the slaughtering of livestock and poultry raised on the premises shall be permitted.

"c. Roadside stand for sale of farm produce provided that the produce offered for sale is produced on the farm on which the stand is located.

"d. Family Day Care Home where such use shall not change the residential character of the lot or the neighborhood."

Sections 4.2 and 4.3 set forth the uses that are permitted by special permits, which are not alleged to be applicable to the plaintiff's situation.

[7] The regulations also allow the use of residential property for conducting personal business, but only if such use would not be noticed by others.

Specifically, § 6.19 of the regulations provides: "Nothing in these regulations shall restrict the use of a private home for personal business by the owner or occupant where there are no employees other than the occupants, no signs indicating a non-residential use, no clients coming to the house and a reasonable neighbor would not know that such an operation is taking place."

[8] This admission alone supports the court's conclusion that the plaintiff violated paragraph 2 of the stipulated judgment. Paragraph 2 prohibits the plaintiff from conducting "any commercial activities whatsoever" on the subject premises. Clearly, moving equipment from the premises to commercial job sites constitutes conducting commercial activities on the premises. The plaintiff has not argued otherwise. In fact, his brief is devoid of any mention of the language of paragraph 2.

―――――――――――――――――――